Appeal Case No. 12-4167

———————————————————

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————————————————

COLLEGESOURCE, INC.

*Plaintiff / Appellant*

v.

ACADEMYONE, INC., and DAVID K. MOLDOFF,

*Defendants / Appellees*

———————————————————

## APPELLANT'S OPENING BRIEF

———————————————————

Civil Appeal
E.D. Pa. Case No. 10-cv-3542-MAM
Hon. Mary A. McLaughlin

———————————————————

Frank R. Emmerich Jr.
CONRAD O'BRIEN PC
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Telephone: (215) 864-8086

William F. Woods
3510 Front Street, #2F
San Diego, CA, 92103
Tel: (619) 742-5000

Darren J. Quinn
Alexander E. Papaefthimiou
LAW OFFICES OF DARREN J. QUINN
12702 Via Cortina, Suite 105
Del Mar, California 92014
Tel: (858) 509-9401

*Attorneys for Plaintiff / Appellant COLLEGESOURCE, INC.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff/Appellant CollegeSource, Inc. is a non-governmental corporate party in the above appeal. There is no parent corporation or any publicly held corporation that owns ten percent (10%) or more of CollegeSource, Inc.'s stock.

# **TABLE OF CONTENTS**

**JURISDICTIONAL STATEMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ISSUES PRESENTED FOR REVIEW**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF RELATED CASES AND PROCEEDINGS**. . . . . . . . . . . . 2

**STATEMENT OF THE CASE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATEMENT OF FACTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    CollegeSource Online ("CSO") And Catalink Services. . . . . . . . . . 12

      B.    CollegeSource's Terms Of Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.    Subscription Terms Of Use. . . . . . . . . . . . . . . . . . . . . . . . . . 13

            2.    PDF College Catalog Terms Of Use And "Splash Page". . . . 13

            3.    Website Terms Of Use. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      C.    A1 Signs Up For Free "Demo" Subscriptions And Unsuccessfully Attempts To License CollegeSource's PDF Catalogs. . . . . . . . . . . 14

      D.    A1 And Its ChinaTeam Intentionally Accessed CollegeSource's CSO Database To Download Whole PDF Catalogs. . . . . . . . . . . . . . . . . 16

      E.    A1 Ignores CollegeSource's Objections To A1's Taking And Use Of The PDF Catalogs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      F.    A1 Used CollegeSource's Trademarks In Adword Internet Advertising. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      G.    A1 Falsely Advertised Its Competing Course Description Database As Current, Up-to-Date, And Reliable. . . . . . . . . . . . . . . . . . . . . . . 22

i

H.    A1 Falsely Advertised Directly To CollegeSource's PDF Catalog
Clients. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**SUMMARY OF ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

I.    **THE DISTRICT COURT ERRED IN DISMISSING
COLLEGESOURCE'S RICO CLAIMS WITHOUT ANY LEAVE TO
AMEND**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

A.    Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

B.    CollegeSource Sufficiently Alleged The Predicate Act Of Receiving
Stolen Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

C.    CollegeSource Sufficiently Alleged The Predicate Act Of Obstruction
Of Justice.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

1.    False Declarations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

2.    Destruction Of Over 88,000 Electronic Files In Violation Of
Court Order.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

3.    Injury To Business Or Property. . . . . . . . . . . . . . . . . . . . . . 32

D.    CollegeSource Sufficiently Alleged The Predicate Act Of Wire Fraud
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

E.    The District Court Erred By Dismissing RICO Claims With Prejudice
And Without Any Opportunity To Amend.. . . . . . . . . . . . . . . . . . . 34

II.    **THE DISTRICT COURT ERRED IN DENYING
COLLEGESOURCE'S MOTION TO DISMISS, STAY OR
TRANSFER THE ACTION TO THE FIRST-FILED CALIFORNIA
COURT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

ii

A.    Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

B.    The First-Filed Rule And Equity Require Reversal And That The
       California Action Go Forward. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

C.    The District Court Erred By Refusing To Give Due Deference To
       CollegeSource's Choice Of Forum In California. . . . . . . . . . . . . . . 37

D.    No "Exceptional Circumstances" Justified Departure From The First-
       Filed Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

E.    The District Court Erred In Ruling That Duplicative Common Claims
       Could Go Forward In Two Separate Courts. . . . . . . . . . . . . . . . . . . 46

F.    The District Court Erred By Wasting Judicial Resources And
       Nullifying Ninth Circuit Proceedings. . . . . . . . . . . . . . . . . . . . . . . 46

III.  **THE DISTRICT COURT ERRED IN GRANTING SUMMARY
       JUDGMENT FOR A1**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

A.    Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

B.    This Court Can Vacate The SJ Order Without Ruling On The Merits
       Of The Claims Pursuant to the First-Filed Rule And Equity. . . . . . 49

C.    This Court Should Summarily Reverse The SJ Order Without Ruling
       On The Merits Of The Claims, Because The District Court
       Erroneously Prevented CollegeSource From Submitting Crucial
       Evidence And Failed To Apply Both *Pioneer* And *Pennypack*. . . . . 50

       1.    Denial Of Motion To Supplement Summary Judgment
              Opposition With Newly Uncovered Evidence. . . . . . . . . . . . . 51

              a.    The District Court Gave CollegeSource's Motion Only
                    Cursory Consideration And Failed To Apply The
                    *Pioneer* Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

        b.     The District Court Applied The Wrong Standard. . . . . 56

        c.     The District Court Abused Its Discretion Under The *Pennypack* Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

    2.    Exclusion Of Novak Summary Of Evidence. . . . . . . . . . . . . 59

    3.    Denial Of Discovery Prevented CollegeSource From Presenting Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

D.    This Court Can Reverse The SJ Order On The Merits Of The Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

    1.    Count 3: The District Court Erred In Granting Summary Judgment To A1 On CollegeSource's Claim For Violation Of The CFAA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

    2.    Count 4: The District Court Erred In Granting Summary Judgment On CollegeSource's Claim For Breach Of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

        a.     A1 Breached The Subscription Terms Of Use. . . . . . . 64

        b.     The Catalog Terms Of Use And Website Terms Of Use Are Enforceable Against A1. . . . . . . . . . . . . . . . . . . . . . 65

    3.    Count 5: The District Court Erred In Granting Summary Judgment To A1 On CollegeSource's Claim For Unjust Enrichment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

        a.     A1 Waived The Affirmative Defense Of Copyright Preemption And Should Not Have Been Allowed To Amend Its Answer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

        b.     The District Court Erred In Holding That CollegeSource's Unjust Enrichment Claim Is Preempted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

4.    Counts 6 and 7: The District Court Erred In Granting Summary Judgment To A1 On CollegeSource's Claim For Trademark Infringement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

5.    Count 9: The District Court Erred In Granting Summary Judgment To A1 On CollegeSource's Claim For False Advertising. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

IV.    **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

CERTIFICATE OF BAR MEMBERSHIP. . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

CERTIFICATE OF WORD COUNT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS. . . . . . . . . . . . . 78

CERTIFICATE OF VIRUS CHECK. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

# TABLE OF AUTHORITIES

<u>Cases</u>:

*A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*,
    166 F.3d 197 (3d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

*Aaron v. Wyeth*,
    2010 U.S. Dist. LEXIS 14581 (W.D. Pa. 2010). . . . . . . . . . . . . . . . . . . . . 71

*Alltrade, Inc. v. Uniweld Products, Inc.*,
    946 F.2d 622 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*,
    421 F.3d 981 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Berner Int'l Corp. v. Mars Sales Co.*,
    987 F.2d 975 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Berner Int'l Corp. v. Mars Sales Co.*,
    987 F.2d 975 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Briggs v. Air & Liquid Sys. Corp.*,
    2012 U.S. Dist. LEXIS 29075 (E.D. Pa. 2012). . . . . . . . . . . . . . . . . . . . . 68

*Burger v. Kuimelis*,
    325 F. Supp. 2d 1026 (N.D. Cal. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Cairo, Inc. v. Crossmedia Services, Inc.*,
    2005 U.S. Dist. LEXIS 8450 (N.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . 66

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG*,
    510 F.3d 77, 102 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

*Cameli v. WNEP-16 the News Station*,
    134 F. Supp. 2d 403 (E.D. Pa. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Capital Concepts, Inc. v. Mountain Corp.*,
    2012 WL 6761880 (W.D. Va. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

*Checkpoint Sys. v. Check Point Software Techs.,Inc*,
    269 F.3d 270 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

*Church of Scientology v. U.S. Dep't of Army*,
    611 F.2d 738 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . 3, 6, 39, 43, 45, 47, 49

*Continental Grain Co. v. Barge FBL-585*,
    364 U.S. 19 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Crosley Corp. v. Hazeltine Corp.*,
    122 F.2d 925 (3rd Cir. 1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Davis v. Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Deleski v. Raymark Industries, Inc.*,
    819 F.2d 377 (3rd Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Democratic Nat'l Comm. v. Republican Nat'l Comm.*,
    673 F.3d 192 (3d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Deppe v. Tripp*,
    863 F.2d 1356 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Drippe v. Tobelinski*,
    604 F.3d 778 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54, 55

*Dunn v. United States*,

842 F.2d 1420 (3d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*E.E.O.C. v. Gen. Dynamics Corp.*,
    999 F.2d 113 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

*EEOC v. University of Pennsylvania*,
    850 F.2d 969 (3rd Cir. 1988). . . . . . . . . . . . . . . . . . . . . . 36, 37, 41, 46, 47

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

*Foman v. Davis*,
    371 U.S. 178 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 34

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,
    615 F.3d 159 (3rd Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Gregory v. Depte*,
    896 F.2d 31 (3d. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Hill v. Gateway 2000, Inc.*,
    105 F.3d 1147 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

*In re Avandia Mktg.*,
    685 F.3d 353 (3d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Diet Drugs Prods. Liab. Litig.*,
    401 F.3d 143 (3d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*In re Grand Jury Proceeding Impounded*,
    241 F.3d 308 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 56

*In re O'Brien Envtl. Energy, Inc.*,
    188 F.3d 116 (3d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

viii

*In re Samsung Elecs. Am., Inc.*,
   67 U.C.C. Rep. Serv. 2d (Callaghan) 794 (D.N.J. 2008). . . . . . . . . . . . . . . 66

*Information Handling Servs. v. LRP Publs., Inc.*,
   Copy. L. Rep. (CCH) P28,177 (E.D. Pa. 2000). . . . . . . . . . . . . . . . . . . . . . 71

*International Union of Operating Engineers, Local 150, AFL-CIO v. Team 150 Party, Inc.*,
   88 U.S.P.Q.2D (BNA) 1532 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

*Interpace  Corp. v. Lapp, Inc.*,
   721 F.2d 460 (3d Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

*Johnson v. Zerbst*,
   304 U.S. 458 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Kohus v. Mariol,*
   328 F.3d 848 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

*Lacey v. Cessna Aircraft Co.*,
   862 F.2d 38 (3rd Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Lony v. E. I. Du Pont de Nemours & Co.*,
   886 F.2d 628 (3rd Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

*Malley-Duff & Associates, Inc. v. Crown Life Ins. Co.*,
   792 F.2d 341 (3rd Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*MCI Telecomms. Corp. v. Teleconcepts, Inc.*,
   71 F.3d 1086 (3d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

*Morse v. United States*,
   267 U.S. 80 (1925). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Mulholland v. Hoffer*,

2007 U.S. Dist. LEXIS 31952 (E.D. Pa. 2007). . . . . . . . . . . . . . . . . . . . . . . 59

*Nat'l Sec. Sys. v. Iola*,
    700 F.3d 65 (3rd Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Newton v. Dana Corp., Parish Div.*,
    1995 U.S. Dist. LEXIS 8473 (E.D. Pa. 1995). . . . . . . . . . . . . . . . . . . . . 53

*Orthmann v. Apple River Campground, Inc.*,
    765 F.2d 119 (8th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 42

*Pineda v. Ford Motor Co.*,
    520 F.3d 237 (3d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Pioneer Inv. Serv. Co. v. Brunswick Assocs.*,
    507 U.S. 380 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54, 56

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (U.S. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*ProCD, Inc. v. Zeidenberg*,
    86 F.3d 1447 (7th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66, 67

*Ragguette v. Premier Wines & Spirits*,
    691 F.3d 315 (3d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49, 55

*Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*,
    198 F.3d 415 (3d Cir. 1999) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

*Sharp v. Johnson*,
    669 F.3d 144 (3d Cir. 2012) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Southwest Airlines Co. v. BoardFirst, L.L.C.*,
    2007 U.S. Dist. LEXIS 96230 (N.D. Tex. 2007). . . . . . . . . . . . . . . . . . . 66

x

*Systems, Inc. v. Bridge Elec. Co.*,
    335 F.2d 465 (3d Cir. 1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

*Szubak v. Secretary of Health & Human Services*,
    745 F.2d 831 (3d Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*TruServ Corp. v. Morgan's Tool & Supply Co.*,
    39 A.3d 253 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

*Ungrund v. Cunningham Brothers, Inc.*,
    300 F. Supp. 270 (S.D.Ill.1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. $31,852.38 in United States Currency*,
    183 Fed. Appx. 237(3d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*United States v. Aguilar*,
    515 U.S. 593 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Pelullo*,
    14 F.3d 881 (3d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*United States v. Rankin*,
    870 F.2d 109 (3rd Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Walasek*,
    527 F.2d 676 (3d Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Weiss*,
    491 F.2d 460 (2nd Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Williams v. Sullivan*,
    2011 U.S. Dist. LEXIS 56414 (D.N.J. 2011). . . . . . . . . . . . . . . . . . . . . . 53

*Windt v. Qwest Communs. Int'l, Inc.*,
    529 F.3d 183 (3rd Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3rd Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Statutes And Rules:

15 U.S.C. §1064 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

15 U.S.C. §1114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

15 U.S.C. §1119 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

15 U.S.C. §1121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

15 U.S.C. §1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

18 U.S.C. §1030 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

18 U.S.C. §1030(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

18 U.S.C. §1503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

18 U.S.C. §1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

18 U.S.C. §2314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

18 U.S.C. §2315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

28 U.S.C. §1332(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

28 U.S.C. §1367(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

28 U.S.C. §1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 39, 43, 45, 47, 49

28 U.S.C. §2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Cal. Bus. Prof. Code §17200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Cal. Pen. Code §502. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Eastern District of Pennsylvania Local Rule 7.4. . . . . . . . . . . . . . . . . . . . . . 36

Fed R. Civ. Proc 6(b)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Fed. R. Civ Proc. 12(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Fed. R. Civ. Proc. 16(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54, 55

Fed. R. Evid. 1006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over the federal claims in the operative First Amended Complaint (**"FAC"**) [18 U.S.C. §1964, 15 U.S.C. §1121, 28 U.S.C. §1331] and supplemental and diversity jurisdiction over the state law claims [28 U.S.C. §1332(a)(1), 28 U.S.C. §1367(a)].

This Court has appellate jurisdiction over the appeal of the Judgment [28 U.S.C. §1291] and "the interlocutory orders (to the extent that they affect the final judgment)." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

## ISSUES PRESENTED FOR REVIEW

The issues presented by this appeal are whether the district court erred in:

1.      Dismissing with prejudice plaintiff/appellant CollegeSource, Inc.'s (**"CollegeSource"**) RICO claims (Counts 1 and 2) against defendants/appellees AcademyOne (**"A1"**) and David K. Moldoff (**"Moldoff"**) without any opportunity to amend;

2.      Denying CollegeSource's motion to transfer, or in the alternative dismiss or stay, the below action to the California Court under the first-filed rule and 28 U.S.C. §1404; and

3.      Granting summary judgment to A1 against CollegeSource on Counts

-1-

3-7 and 9.  This includes review of interlocutory orders[1] that affected the final

judgment.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court.  In order of filing date,

CollegeSource is aware of the following related cases or proceedings, completed,

pending or about to be presented:

1.    *CollegeSource, Inc. v. AcademyOne, Inc.*, United States District Court

for the Southern District of California ("**California Court**"), No. 08cv1987

("**California Action**").  On October 27, 2008, CollegeSource filed the California

Action against A1 that contains seven claims identical to claims asserted below

plus three California claims not assertable below.  The California Action is

currently pending and both parties have filed fully briefed motions for summary

judgment that are stayed under comity pending this appeal.  [JN1{Dkts1,166-

_____

[1]    The interlocutory orders are: (1) order denying CollegeSource's
request to supplement its opposition to A1's motion for summary judgment and/or
be allowed additional discovery [APX91]; (2) void order granting A1's motion to
exclude the Declaration of Stan Novak after district court lost jurisdiction by
notice of appeal [APX28]; (3) order granting A1's motion for leave to amend its
Answer to assert a copyright preemption affirmative defense [APX96]; (4) order
denying CollegeSource's motion for leave to strike A1's affirmative defense of
copyright preemption [APX94]; and (5) discovery orders that prevented
CollegeSource from offering evidence in opposition to summary judgment
[APX102, 125, 181].

231}]

2.     *AcademyOne, Inc. v. CollegeSource, Inc.*, United States District Court for the Eastern District of Pennsylvania, No. 08cv5707 (**"A1 Action"**).  On December 8, 2008, A1 filed A1 Action against CollegeSource.  Judge Padova granted CollegeSource's motion for summary judgment on all claims. *AcademyOne, Inc. v. CollegeSource, Inc.*, 2009 U.S. Dist. LEXIS 118849 (E.D. Pa. Dec. 21, 2009).

3.     *CollegeSource, Inc. v. AcademyOne, Inc.*, United States Court of Appeals for the Ninth Circuit, No. 09-56528 ( "**Jurisdiction Appeal**").  On September 21, 2009, CollegeSource appealed the California Court's dismissal of the California Action for lack of personal jurisdiction over A1.  The Ninth Circuit reversed, remanded for further proceedings *in California*, and made numerous findings against A1.[2] *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. August 8, 2011) (*CollegeSource I*).

4.     *CollegeSource, Inc. v. AcademyOne, Inc.*, United States District Court

---

[2]     The Ninth Circuit found portions of Moldoff's declaration "***implausible, to say the least***" and that "AcademyOne's assertion that it was fortunate enough to obtain for free, unintentionally and unknowingly, the material that it had once unsuccessfully attempted to purchase ***strains credulity***." *CollegeSource I*, 653 F.3d at 1078-1079 (emphasis added).   By reversing, an implicit finding is that the due administration of justice was actually interfered with.

for the Eastern District of Pennsylvania ("**Pennsylvania Court**"), No. 10cv3542

("**Pennsylvania Action**").  On July 20, 2010, CollegeSource filed the below

action as a protective measure while the California Jurisdiction Appeal was

pending to protect statutes of limitation, preserve evidence and stop ongoing

misconduct.

5.     *CollegeSource, Inc. v. AcademyOne, Inc.*, United States Court of

Appeal for the Ninth Circuit, No. 11-57145 ("**Enjoin  Appeal**").  On December 9,

2011, CollegeSource filed an emergency appeal to the Ninth Circuit from the

California Court's denial of CollegeSource's motion to enjoin the below action in

favor of the first-filed California Action, but the appeal was dismissed as moot on

January 22, 2013 following Judgment in the Pennsylvania Action. [JN94-99{Dkt

Sheet}]

6.     *CollegeSource, Inc. v. AcademyOne, Inc.*, United States Court of

Appeal for the Ninth Circuit, Case No. 12-55013 ("**Stay Appeal**").  On January 3,

2012, CollegeSource filed an emergency appeal to the Ninth Circuit from the

California Court's order staying the first-filed California Action in favor of the

below action, but the appeal was dismissed as moot on January 22, 2013 following

Judgment in the Pennsylvania Action. [JN99{Dkt50}]

## STATEMENT OF THE CASE

On October 27, 2008 CollegeSource filed the California Action. The California Action was erroneously dismissed for lack of personal jurisdiction after the district court relied upon false declarations by A1 and Moldoff. On September 21, 2009, CollegeSource filed its Jurisdiction Appeal from the erroneous dismissal of the California Action.[3]

On July 20, 2010, CollegeSource filed the Pennsylvania Action, below, as a protective measure to preserve statutes of limitation, preserve evidence and stop ongoing misconduct while its Jurisdiction Appeal was pending. Both the California Action and Pennsylvania Action assert claims for: (1) Violation of U.S. Computer Fraud and Abuse Act [18 U.S.C. §1030(g)]; (2) Breach of Contract; (3) Unjust Enrichment; (4) Trademark Infringement under U.S. Lanham Act [15 U.S.C. §1114]; (5) Unfair Competition under U.S. Lanham Act [15 U.S.C. §1125(a)]; (6) False Advertising under U.S. Lanham Act [15 U.S.C. §1125(a)]; and (7) Declaration of Trademark Invalidity [28 U.S.C. §2201; 15 U.S.C. §§1064, 1119].

The differences between the California Action and Pennsylvania Action are: (1) the first-filed California Action has always asserted three solely California

---

[3]      *See* n.2.

claims[4] that were never asserted (and could never be asserted) in the Pennsylvania

Action; and (2) the Pennsylvania Action asserts a claim under RICO against A1

and Moldoff based, in part, upon defendants' obstruction of justice by submitting

false testimony in the California Action that resulted in its erroneous dismissal.

On May 18, 2011, the Pennsylvania Court dismissed the RICO claims, with

prejudice, for failure to sufficiently allege facts *without even **once** allowing*

*CollegeSource leave to amend*.

On August 8, 2011, the Ninth Circuit  reversed the dismissal for lack of

personal jurisdiction in the California Action, made findings[5] and mandated

"further proceedings consistent with this opinion" in California. *CollegeSource I*,

653 F.3d at 1080.

CollegeSource promptly sought to have the second-filed Pennsylvania

Action transferred to California, or dismissed or stayed.[6] ***At that time, no motions***

***were pending and no depositions had been taken in the Pennsylvania Action***.

On October 31, 2011, the Pennsylvania Court denied CollegeSource's motion.

---

[4]     The three solely California claims are: (1) violation of the California
Computer Crimes Act, Cal. Pen. Code §502; (2) misappropriation; and (3) unfair
competition, in violation of Cal. Bus. Prof. Code §17200. [APX1082{Complaint}]

[5]     *See* n.2.

[6]     For a detailed chronology, *see* AA1071{Quinn}¶¶2-29.

On November 8, 2011, CollegeSource filed a motion in the first-filed California Action to enjoin the Pennsylvania Action. Two weeks later, A1 filed a motion in the first-filed California Action to transfer or stay the California Action. In violation of the Ninth Circuit's mandate for "further proceedings" in California, the California Court denied CollegeSource's motion and granted, in part, A1's motion by issuing a six month stay of the California Action which was extended an additional three months.

On January 12, 2012, CollegeSource filed its opening briefs with the Ninth Circuit on its expedited preliminary injunction appeals on both orders. CollegeSource also moved the Ninth Circuit to enjoin the Pennsylvania Action pending these expedited appeals. The Ninth Circuit denied CollegeSource's motions without discussing their merits but did treat the appeals as expedited preliminary injunction appeals. [JN98{Dkt31}]

On February 27, 2012, A1 filed its motion for summary judgment in the Pennsylvania Action on all remaining (non-RICO) claims, including argument on a never asserted copyright preemption affirmative defense. CollegeSource opposed, including argument that A1's copyright preemption affirmative defense was never asserted and was waived.

*After* the discovery and motion cutoffs and *after* CollegeSource filed its

summary judgment opposition, A1 requested leave to amend its answer to assert a copyright preemption defense without any supporting declaration showing "good cause." [APX21{Dkt184},APX23{Dkt196}]  On May 24, 2012, the Pennsylvania Court granted A1 leave, but did ***not*** allow CollegeSource any discovery on this first time asserted defense.  CollegeSource asked for leave to file a motion to strike A1's  new defense under Fed. R. Civ Proc. 12(f), which the Pennsylvania Court denied ***before* A1's opposition was even due.**  [APX24{Dkts207&208}]

In CollegeSource's summary judgment opposition, CollegeSource requested the Pennsylvania Court to stay or defer ruling so as not to moot the pending Ninth Circuit expedited preliminary injunction appeals.  The Pennsylvania Court refused to defer to the Ninth Circuit and held oral argument on June 13, 2012.  On August 22, 2012, CollegeSource notified the Pennsylvania Court that the pending Ninth Circuit expedited preliminary injunction appeals should be fully briefed in October, 2012 and again renewed its request that the Pennsylvania Court not moot the Ninth Circuit appeals and stay the Pennsylvania Action.  [APX1865-66{letter}] The Pennsylvania Court again ***refused any comity to the Ninth Circuit***. [APX1886-1889{letter},APX1903{transcript}]

On September 21, 2012, CollegeSource moved the Pennsylvania Court for leave to supplement its summary judgment opposition with newly uncovered

evidence.  First, A1, without authorization, logged-in via usernames/passwords of CollegeSource's paying subscribers to access CollegeSource's PDF catalog database (which A1 falsely denied in discovery after being compelled to respond) [APX4795{Quinn},¶4].  Second, A1 deleted over 88,000 electronic files with provocative names[7] from its own server prior to production in discovery to CollegeSource.  CollegeSource also sought to reopen discovery regarding the newly uncovered evidence.  On September 27, 2012, the Pennsylvania Court issued a two page order denying CollegeSource's motions ***before* A1's oppositions were due**. [APX24{Dkts222-225}]

On September 28, 2102, the California Court denied A1's motion to re-extend the stay again. [JN23{Dkt162}]  On October 11, 2012, CollegeSource moved for partial summary judgment in the California Action on liability on its three solely California claims[8] (not assertable in the Pennsylvania Action) based in part on newly uncovered evidence of unauthorized login with paying subscriber passwords and deleted electronic files that the Pennsylvania Court erroneously

---

[7]      *See* n.18.  CollegeSource was prevented from recovering the deleted files, so CollegeSource only has the file names ("smoking holsters").

[8]      *See* n.4.

excluded (§III.C.1-2).[9] [JN43{motion}]

On October 25, 2012, the Pennsylvania Court granted A1 summary judgment on all remaining claims [APX 34-90{**"SJ Order"**}] and entered judgment.   CollegeSource filed this appeal on November 2, 2012.

On November 7, 2012, after the notice of appeal was filed and the Pennsylvania Court lost jurisdiction, the Pennsylvania Court purported to grant A1's never ruled upon motion to exclude the declaration of Stan Novak, which summarized voluminous documents showing A1's download of catalogs without authorization from CollegeSource's website. A1 objected to only part of the Novak declaration, but the district court issued a void order excluding it entirely after losing jurisdiction. (§III.C.2)

On November 28, 2012, A1 moved for summary judgment in the California Action based upon claim and issue preclusion as a result of the Judgment and SJ Order in the Pennsylvania Action. [JN26{Dkt186}]

Both parties' motions for summary judgment in the California Action have been fully briefed. *See* n. 5.  On April 15, 2013, the California Court stayed the California Action pending the outcome of this appeal, showing comity to this

---

[9]    A1 opposed CollegeSource's summary judgment motion, in part, on the ground that triable facts exist even though it successfully argued the opposite in the Pennsylvania Action. [JN62-87{Lewis Objection}]

Court even though no comity was shown to the Ninth Circuit. [JN92{Order}]

## STATEMENT OF FACTS

Founded in 1971, CollegeSource[10] is the pioneer of the digital college course catalog and college transfer credit industry.  Over at least the past sixteen (16) years, CollegeSource has created over 53,239 digitalized whole PDF catalogs and 44,700,000 digitized course records, including course descriptions, credits, course names and prerequisites extracted from its whole PDF catalogs ("**Digitized Information**").  CollegeSource has invested over $10,000,000.00, and countless hours, in creating and compiling its comprehensive database of digitized whole PDF catalogs and other information. [APX1362{Cooper}¶¶2-8]

Defendant A1 (founded in 2005) is a junior competitor of CollegeSource. Like CollegeSource, A1 offers information and data services on the Internet related to equivalencies, course articulations, transcript reconciliations and/or college transfer credits. [APX1366{Cooper},¶12]

In 2005, A1 wanted to negotiate the right to purchase/license CollegeSource's PDF catalogs so that A1 could populate its competing course database without incurring the cost of digitizing itself.  CollegeSource declined A1's requests. [APX1366{Cooper},¶13]

---

[10]    As used herein, the term "CollegeSource" includes CollegeSource's predecessor, the non-profit Career Guidance Foundation (**"CGF"**).

Unable to license CollegeSource's Digitized Information, A1 and its China contractor[11] (**"China Team"**) took, for *free*, at least 1,500 of CollegeSource's digitized whole college catalogs from CollegeSource's server, through a combination of unauthorized use of CollegeSource subscriber username/passwords, free trials, Catalink, and other means. [APX3770,¶4, APX4834,¶24] A1 then "scraped" (cut and pasted) the digitized course description data from CollegeSource's PDF catalogs to populate its competing database.

A1 also infringed CollegeSource's trademarks "COLLEGESOURCE" and "CAREER GUIDANCE FOUNDATION" and issued false advertising.

## A.    CollegeSource Online ("CSO") And Catalink Services

The CollegeSource Online (**"CSO"**) service is CollegeSource's database of over 53,000 digitized whole PDF college catalogs available over the Internet. [APX783:18-18{Novak}1363{Cooper},¶7]

CollegeSource's related Catalink service allows an individual college to post *its* catalogs through links on *its* website to *its (and only its)* catalogs in CollegeSource's CSO database.  The catalogs are on CollegeSource's server, but the links to the catalogs are on the colleges' websites. [APX2551-2553{screenshots}] Catalink does ***not*** allow access from one college's website to any other college's

---

[11]    Beijing Zhongtian, Noah Sports Science Co., Ltd. [APX582{Moldoff}¶12]

catalogs, even if both colleges subscribe to Catalink. *Id*. Only a small fraction of the over 1,500 CollegeSource catalogs A1 misappropriated from the CSO database could have come from Catalink, and A1 never asserted otherwise. (§III.D.1)

**B.    CollegeSource's Terms Of Use**

CollegeSource restricted the access and use of its Digitized Information through numerous terms of use (**"Terms of Use"**).

**1.    Subscription Terms Of Use**

Users of CSO must agree to a Subscription Agreement (**"Subscription Terms of Use"**) in order to obtain a free "demo" for limited downloads of whole catalogs or a paid subscription for unlimited downloads. [APX1363{Cooper}]¶11]

The Subscription Terms of Use only allows "***personal, non-commercial use***" and other related restrictions.  *Id*. (see full text)

**2.    PDF College Catalog Terms Of Use And "Splash Page"**

CollegeSource's embedded security code forces each whole catalog on CSO to be opened to the "Splash Page" that identifies the catalog as coming from CollegeSource, and invites the user to visit CollegeSource's web site. [APX281{Novak},¶9]

The **entire second page** of every PDF college catalog on CSO is occupied by the **"Catalog Terms of Use"** which provide, in part:

-13-

You may:

\*        print copies of the information for your own **personal use**,
\*        store the files on your own computer for **personal use** only,
. . .
CollegeSource® and Career Guidance Foundation  **reserves the right to revoke such authorization at any time**, and any such use shall be discontinued immediately upon written notice from CollegeSource® and Career Guidance Foundation.

[APX1363{Cooper}¶9, 282{Novak},¶9 (emphasis added)].

When A1 "scraped" the text from CollegeSource's PDF catalog and pasted it to a text document, the Catalog Terms of Use are one of the first things that appeared on the computer screen. [APX802:24-88:11{Novak}]

### 3.    Website Terms Of Use

CollegeSource's webpages (in addition to each PDF catalog itself) also contain **"Website Terms of Use"** that include terms substantively identical to the PDF Catalog Terms of Use. [APX1364{Cooper}¶10]

A1 accessed the Website Terms of Use on: (1) November 8, 2006; (2) May 16, 2008; (3) April 29, 2010; (4) April 29, 2010 and (5) August 10, 2010. [APX4838{Novak}¶34,5078{Search Results}].

### C.    A1 Signs Up For Free "Demo" Subscriptions And Unsuccessfully Attempts To License CollegeSource's PDF Catalogs

In 2005, A1 employees registered for free "demo" subscriptions with

-14-

CollegeSource, and A1 contends that it complied with the Subscription Terms of Use.[12] In order to obtain its "demo" subscriptions, A1 was ***required*** to agree to the Subscription Terms of Use. [APX1364{Cooper}¶11]

On October 4, 2005, A1 sent an email to CollegeSource that provides, in part: "what does it cost to obtain ALL your catalogs in electronic form, ASAP?" [APX738:16-25{Cooper}, 206]  On December 20, 2005, A1 emailed CollegeSource "to determine whether CollegeSource had the interest and/or ability to provide [A1] with an electronic file of courses that could be loaded into our course inventory." [APX740:5-14{Cooper}, 207]  A1 again emailed CollegeSource on January 25, 2006 "...to determine whether a conversation is warranted to discuss how our companies might benefit from working together in an effort to create an online course inventory." [APX740:15-23{Cooper},APX208]

A1 wanted to negotiate the right to purchase or license CollegeSource's Digitized Information so that A1 could populate its competing course description

---

[12]      Defendant's President, Moldoff, swore:
11.    ...In 2005, as AcademyOne prepared to create its systems, several of its employees registered for "demo" memberships with CollegeSource...The demo subscriptions only allowed users to view CollegeSource material on its website and download no more than three course catalog files.  AcademyOne did not exceed the ***terms of the subscription***.

[APX198{Moldoff}¶11(emphasis added)]

database without incurring the cost of acquiring, compiling and digitizing course descriptions itself. [APX1366{Cooper}¶13] CollegeSource declined A1's requests. *Id*.

### D.   A1 And Its ChinaTeam Intentionally Accessed CollegeSource's CSO Database To Download Whole PDF Catalogs

A1 and its China Team collected course descriptions. [APX582{Moldoff}¶12] A1 represents that it gathered approximately 4,000 catalogs through the China Team. [APX666:1-5, 667:2-9{Stanley}]

A1 and its China Team  knowingly, without authorization, accessed CollegeSource's computer servers to obtain over 1,500[13] of CollegeSource's digitized whole college catalogs. [APX3770,¶4, APX4834,¶24]  Eleven (11) categories of indisputable evidence establish that A1 intentionally accessed CollegeSource's computers to download whole catalogs from CollegeSource.  Some of these categories of evidence were erroneously excluded or not considered by the district court.  (§III.C.1-2)

First, CollegeSource's server logs show that Internet IP addresses associated

---

[13]     The actual number may be much higher. Over 88,000 electronic files were deleted by A1 after this action was filed and the court below entered a preservation order. [APX4838{Novak},¶31(d),181{Order}]  Additionally, certain CollegeSource server logs were not available for the periods  February 21, 2007 to April 30, 2007 and September 1, 2009 to December 30, 2009 to trace additional unauthorized access. [APX1918{Weil}¶3]

exclusively with A1 and its China Team accessed at least 576[14] whole PDF catalogs without authorization, by logging-in with usernames/passwords of CollegeSource's paying subscribers Bellmore Memorial Library (near New York City) and Santa Fe College (Gainesville). [APX4835{Novak}¶25] A1's first known unauthorized access on January 2, 2007[15] was followed shortly by its China Team's unauthorized access on January 10, 2007[16] and numerous occasions thereafter.[17] The username/passwords of CollegeSource's paying subscribers, such as Bellmore Memorial Library and Santa Fe College, are not intended for use by A1's China Team or A1. [APX4836{Novak}¶27].

Second, A1 had spreadsheets with Internet URL links containing

---

[14]   For the purpose of this appeal, CollegeSource ignores the 31 catalogs indicated as accessed by A1's law firm 607-31=576). [APX4834{Novak},¶¶24-25 and 4934-4945{Ex. H} {607 catalogs accessed}].

[15]     *A1* IP address logged-in via the username/password for Bellmore Memorial Library (UPAuth=29842) [APX4834{Novak}¶23, Ex. G{Excel native, sheet 666.252.98.234, cell N1952}]

[16]     An *"a1chinateam"* IP address logged-in via the usernames/passwords for Bellmore Memorial Library (UPAuth=29842) [APX4834{Novak}¶23,  Ex. G {Excel native, sheet A1ChinaTeam,cell N600}] and Santa Fe College (UPAuth=28024).  [*Id*., Ex. G{Excel native, sheet 666.252.98.234,cell N1952}]

[17]     APX4834{Novak}¶23, Ex. G {Excel native, sheet A1ChinaTeam, Columns G and N {search for references to "upauth,"starting at Row 599}. APX4823{Novak}¶¶24-25.

"www.collegesource.org" for use in downloading at least 329 CollegeSource catalogs from CollegeSource's server. [APX3770{Novak}¶¶4(a)&5 and 3848-3869{Ex. B}, 4788{Novak}¶11]

Third, CollegeSource has screenshots from April 2007 showing A1's website distributing at least 720 of CollegeSource's digitized whole PDF catalogs. [APX3770{Novak}¶¶4(b),6,APX3870-3885{Ex.C,   APX1367{Cooper}¶15, APX3470{Bandemer}¶11,APX282{Novak}¶¶13-21]

Fourth, A1 admitted on May 16, 2007 that it currently had at least 783 CollegeSource catalogs. [APX3009-3021{email}, APX 3771{Novak}¶¶4(c)&7, APX3886-3903{Ex. D}, APX4789{Novak}¶12]

Fifth, even after the below litigation was filed, A1 admitted on January 5, 2011 that it had used 623 CollegeSource catalogs. [APX619{Stanley}¶19 and 623-637{Ex. 1}, APX3771{Novak}¶¶4(d)&8 and 3904-3918{Ex. E}, APX4786{Novak}¶3]

Sixth, CollegeSource has "scraping" evidence that shows eight instances where course descriptions posted on A1's website contained "watermarking" (hidden page-level text), "salting" (hidden course-level text), or "seeding" (alternative spellings of words) from CollegeSource's PDF catalogs. [APX3771{Novak}¶¶4(e)&9, APX282{Novak}¶¶13-21, APX3970{Bandemer}¶¶13-22] CSI began using such markings in response to catching A1 posting whole CSI

catalogs in April, 2007. [APX3771{Novak}¶¶4(e)&9]

Seventh,  A1 had electronic folders with file paths named "collegesource" or "cs" on its computers containing at least 30 CollegeSource catalogs. [APX3771{Novak}¶¶4(f)&10,  APX3920-3921{Ex.G},  APX4789{Novak}¶15, APX3461{Bandemer}¶17]

Eighth, A1 produced PDF files with metadata (hidden from view data, such as author) indicating that CollegeSource (or its predecessor CGF) was the author of at least 33 PDF catalogs used by A1. [APX3772{Novak}¶¶4(g), 11 and 3922{Ex. H}] [APX3459{Bandemer}¶16]

Ninth, CollegeSource's watermarks containing "CollegeSource, Inc. and Career Guidance Foundation" were found in 2,514 of A1's course descriptions in A1's course description database.  [APX3772{Novak}¶4(h),AXP3923-4598{Ex.I)}] CollegeSource's "watermarks" were invisible to a person viewing the CollegeSource PDF catalog (*e.g.* white text on white background), but became visible when defendant "copied" and selected the text from the CollegeSource PDF catalog and "pasted" it into a spreadsheet or database. [APX301{Novak}¶18, APX4790{Novak}¶16-18, APX3772{Novak}¶¶4(h)&12, APX3458{Bandemer}¶14]

Tenth, CollegeSource's "seeds" (alternative spellings of words such as "color" to "colour") were found in 1,141 course descriptions in A1's course description

database. [APX3772{Novak}¶¶4(i)&13,APX4699-4643{Ex.J},

APX4791{Novak}¶¶19-20]. CollegeSource began using "seeds" in response to

catching A1 posting whole CollegeSource PDF catalogs in April, 2007.

[APX3772{Novak}¶4(I)]

Eleventh, A1 did not produce over 88,000 electronic files in discovery,

including electronic files with provocative names.[18] These files were among over

14,000 electronic files deleted on February 14, 2011 and were all overwritten just a

few days earlier. [APX4838{Novak}¶33,APX4952-5077{Ex.K}]. The

missing/deleted files were uncovered when the provocative file names were found in

the "hidden" Microsoft system file "$UsnJrnl•$J" ("**Change Journal**") but the actual

files were not on A1's server produced in discovery.  [APX4837{Novak}¶31]

### E.    A1 Ignores CollegeSource's Objections To A1's Taking And Use Of The PDF Catalogs

In April, 2007, after CollegeSource caught A1 distributing CollegeSource's

PDF catalogs on A1's competing website, CollegeSource sent A1 a cease and desist

---

[18]    The deleted filenames include:
(1) B20910_Institutions_With_CollegeSource_Source.xlsx [APX4972];
(2) Catalog sources - Master List 08-09.xls [APX4976];
(3) Colleges that have been cleaned.xlsx [APX5015];
(4) Courses with no source or CS source.sql [APX5027]; and
(5) CS dirty data.xlsx [APX5028].
[APX4836{Novak}¶¶28-33, APX4952-5077{Ex.K- list of file names}]

letter that demanded that A1 "Remove any data (e.g. course descriptions) or PDFs that were extracted from any of CollegeSource's PDF catalogs from all AcademyOne/CollegeTransfer.net, affiliate, and subcontractor computers (e.g. servers, web servers, desktop computers, laptop computers) AND storage devices (e.g. tape, disk, CDs, DVDs)." [APX1367{Cooper}¶14(c),APX1370-1374{Ex. A}].

When A1 refused to cease its conduct, CollegeSource filed the California Action. The Complaint in the California Action set forth the Terms of Use and made clear that A1 was "without authorization" to obtain CollegeSource's PDF files. [APX1367{Cooper}¶14(d) and APX1578-1602{CA Complaint}] Yet, A1 continued to commercially exploit CollegeSource's data *even after the California Action was filed*. [APX4835{Novak},¶24, APX4945-4946{Ex.H-Rows594-608 showing A1 downloaded numerous catalogs with edition years starting in 2010, 2011, and 2012}]

### F.     A1 Used CollegeSource's Trademarks In Adword Internet Advertising

In April of 2007 (after A1 had attempted to license the Digitized Information from CollegeSource in late 2005 to early 2006), A1 purchased CollegeSource's Trademarks, including *CollegeSource's name* of "COLLEGESOURCE" and "COLLEGE SOURCE", as Google AdWords. [APX2427{Moldoff}¶18] As a result, when CollegeSource's Trademarks were entered as search terms in the Google search engine, the consumer would be presented with advertisements for A1's

-21-

www.CollegeTransfer.net website. [APX1380{Holaday}¶¶10-14, 1400-1569{Ex. I} and 1570-1571{Ex. J}]  A1's advertisements included, ***inter alia***:

> **College Transfer Help**
> Maximize your prior learning credit Check transferability, advising +++
> www.collegetransfer.net

[APX1400{screenshot}][APX1403 and 1409{screenshots}]

Neither Defendant's advertisements nor its linked domain make any mention of A1 [APX1400-1569 {Ex. I}] A1 has offered CollegeSource's Digitized Information and catalogs (with "splash page" and Catalog Terms of Use intact) on A1's www.CollegeTransfer.net website. [APX3770{Novak}¶¶4(b), 6 and 3870-3885{Ex. C}]

### G.    A1 Falsely Advertised Its Competing Course Description Database As Current, Up-to-Date, And Reliable

A1 makes several false statements on its website regarding its competing course database, including that it is "published annually" with "current course offerings," is the "most comprehensive database of current course offerings possible," not "outdated," and is "reliable, accurate, and up-to-date." [APX1706-1710 {screenshots}]

CollegeSource presented evidence that 89% of A1's course data is three years

old or more (2009 start date[19]) and 97% of A1's course data is two years old or more (2010 start date), so A1's database is out-of-of date and unreliable. [APX3785{Novak}¶21,APX4682-4771{Ex. N}]

### H.    A1 Falsely Advertised Directly To CollegeSource's PDF Catalog Clients

While the Pennsylvania Action was pending, A1 sent out over 300 letters to colleges containing false statements about CollegeSource and touting A1's own services.    [APX870:25-871:4{Moldoff}]    The false statements regarding CollegeSource included, *inter alia*, that "CollegeSource is attempting to preclude AcademyOne and other software providers from providing automated student transfer systems" and that CollegeSource had filed "copyright claims" in the Pennsylvania Action "whereby CollegeSource is claiming ownership and control of your institution's digital catalog and the course descriptions contained within." [APX562{Cooper}¶¶3-10,APX565{Ex.1},APX1370{Letter}]

### SUMMARY OF ARGUMENT

As discussed in §I, the district court below erroneously dismissed CollegeSource's RICO claims without even *once* granting CollegeSource leave to amend.   False declarations by A1/Moldoff were relied upon by the district court in

---

[19]    By default, the "Start Date" is the "Month and year of upload" into A1's database. [APX4773{Quinn}¶4 and 4775{Ex. A}].

the California Action in erroneously dismissing that action for lack of personal jurisdiction as confirmed by the Ninth Circuit.[20]

As discussed in §II, the district court below erred in denying CollegeSource's motion to dismiss, stay or transfer the action to the first-filed California Court after the Ninth Circuit reversed the dismissal of the California Action.  No exceptional circumstances justified departure from the first-filed rule.

As discussed in §III, the district court below erred when it granted summary judgment for A1 and ruled against CollegeSource on seven interlocutory orders. First, these orders should be vacated as consistent with the first-filed rule and equity. Second, the SJ Order can be summarily reversed, because the district court failed to apply the correct law and improperly precluded evidence.  Third, the SJ Order can be reversed on the merits of each claim.

## ARGUMENT

## I.    THE DISTRICT COURT ERRED IN DISMISSING COLLEGESOURCE'S RICO CLAIMS WITHOUT ANY LEAVE TO AMEND

The district court erroneously dismissed CollegeSource's RICO claims (Counts 1 and 2) and denied CollegeSource's repeated requests for leave to amend without providing any justifying reason.

---

[20]    *See* n.2.

A.    **Standard Of Review**

This Court reviews "de novo the decision of a district court granting a motion to dismiss, pursuant to Rule 12(b)(6)." *In re Avandia Mktg.*, 685 F.3d 353, 357 (3d Cir. 2012).  The grant or denial of leave to amend is reviewed for an abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962)

B.    **CollegeSource Sufficiently Alleged The Predicate Act Of Receiving Stolen Property**

The district court properly found that "plaintiff alleges that the defendants violated 18 U.S.C. §§2314 and 2315 by transporting and receiving stolen property, namely CollegeSource's digitized course catalogs." [APX149{Order}, APX435{FAC}¶¶46-71]

The district court erred, however, by ruling "[a]lthough the plaintiff has alleged some loss in the form of foregone licensing fees as well as vague allegations of competitive loss, there is no concrete financial, out-of-pocket loss that arises from the defendants' alleged wrongful actions."  [APX149{Order}]

The district court erred, because **a reasonable royalty is an appropriate measure of "out of pocket" damages for the wrongful use of CollegeSource's property**. *Davis v. Gap, Inc.*, 246 F.3d 152, 166-167 (2d Cir. 2001) ("establishing the fair market value of the license fee of which the owner was deprived is no more speculative than determining the damages in the case of a stolen cargo of lumber or

-25-

potatoes.") CollegeSource alleged that it suffered "harm proximately caused" by the "loss of a reasonable license for defendants' extensive use of CollegeSource's Digitized Information" and that A1 attempted to license it.    [APX431-434{FAC},¶¶36-39,44(b)]

Even assuming no injury from A1's violation of 18 U.S.C. §§2314 and 2315 (receipt of stolen property), "no requirement exists that the plaintiff must suffer an injury from two or more predicate acts, or from all of the predicate acts...Thus, a RICO verdict can be sustained when a pattern of racketeering acts existed, but when only *one* act caused injury."   *Deppe v. Tripp*, 863 F.2d 1356 (7th Cir. 1988) (emphasis added).  As discussed below, CollegeSource has alleged injury from one or more of the other predicate acts.

### C.    CollegeSource Sufficiently Alleged The Predicate Act Of Obstruction Of Justice

The district court correctly found: "The elements of a prima facie case of obstruction of justice under 18 U.S.C. §1503 are '(1) the existence of a judicial proceeding, (2) knowledge or notice of the pending proceeding, (3) acting corruptly with the intent of influencing, obstructing, or impeding the proceeding in the due administration of justice, and (4) that the action had the natural and probable effect of interfering with the due administration of justice.' *In re Grand Jury Proceeding Impounded*, 241 F.3d 308, 317 n.8 (3d Cir. 2001) (internal quotation omitted)."

[APX152]

As discussed in §I.C.1-3, the district court erred in ruling CollegeSource did not allege (and could not allege) those elements.[21]

### 1.    False Declarations

The district court erred by ruling that the "plaintiff has failed to allege facts that plausibly suggest that Mr. Moldoff has 'corruptly' submitted false affidavits in the California action." [APX152]

The submission of a false declaration violates 18 U.S.C. §1503. *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989) ("the filing of a specific affidavit in a specific judicial proceeding that was false in specified respects" sufficiently alleged obstruction of justice, even "without a specification of the particular manner in which the affidavits had the effect of obstructing justice.").

CollegeSource alleged, *inter alia,* "Defendants intended for the false statements in the First Moldoff Declaration, Second Moldoff Declaration and Third Moldoff Declaration, and the destruction and/or withholding of evidence, to obstruct or impede the due administration of justice" [and] "[b]y way of submitting the First Moldoff Declaration, Second Moldoff Declaration and Third Moldoff Declaration to the Southern District of California and relying thereon in their motions to dismiss,

---

[21]    *See* n.2.

defendants corruptly endeavored to influence, obstruct and/or impede, and did influence, obstruct and/or impede, the due administration of justice, in violation of 18 U.S.C. §1503." [APX452-453{FAC}¶¶124,126),APX444-453{FAC}¶¶93-130] After the district court dismissed the RICO claims, the Ninth Circuit made findings that support obstruction of justice.[22]

The Third Moldoff declaration contains numerous false statements that were material and relied upon by the California Court in dismissing the California Action for lack of personal jurisdiction. **First**, the California Court states: "Defendant's uncontroverted affidavit avers that its Adwords were selected by the search engines and were purchased before Defendant knew Plaintiff was located in California. (Moldoff Decl.¶20.)" [JN41{CA Order}]  In connection with summary judgment in this case, Moldoff swore the Adwords were "***purchased in April 2007***." [APX2427{Moldoff}¶18] In truth, IP address information from CollegeSource's web logs show that A1 clicked on CollegeSource's "Contact Us" page showing CollegeSource's California address ***four times before April, 2007***. The Ninth Circuit also suggested Moldoff's declaration was false.[23]

**Second**, the California Court states: "Defendant explains that it collected

---

[22]    *See* n.2.

[23]    *See* n.2.

information for its database by hiring a contractor to visit the websites of thousands of colleges. (Moldoff Decl.¶6-8)." [JN39{CA Order}]   Moldoff falsely swore "Neither the contractor in China nor AcademyOne knew the source of the information other than the college or university because *not one link directed AcademyOne to CollegeSource's main page or required any login*." [APX198{Moldoff}¶8]   In truth, IP address information from CollegeSource's web logs shows that some of the college catalogs were collected by logging in, *without authorization,* via the *usernames/passwords* for CollegeSource subscribers Bellmore Memorial Library and Santa Fe College. [APX4835{Novak}¶25]

**Third**, the California Court states: "The college's course descriptions were downloaded without being opened, such that AcademyOne never saw Plaintiff's terms of use statement allegedly present on approximately 680 of these documents. (*Id.*; [Moldoff] Decl.¶¶4-7.)" [JN33{CA Order}]   Moldoff falsely swore, without personal knowledge,  "When the contractor collected these course descriptions, it downloaded the digital content as complete files without opening each individual file. No copyright notice or "splash" page was seen by the contractor or any AcademyOne employee during the process." [APX198{Moldoff}¶7] In truth, once downloaded, each PDF file *must be opened* to access the course descriptions.  The PDF opens up to  CollegeSource's "splash" page, immediately followed by terms of use.

[APX802:24-88:11{Novak}]

**Fourth**, the California Court states: "Though CollegeSource's main page displays its terms of use, Defendant states that none of the file links accessed by Defendant directed it to CollegeSource's website. (FAC.¶39; Moldoff Decl.¶8)" [JN33{CA Order}]    Moldoff falsely swore: "AcademyOne never saw CollegeSource's terms of use for the web sites it visited." [APX198{Moldoff}¶8] In truth, CollegeSource's weblogs show the IP address for A1 accessed the Website Terms of Use (which are substantively identical to the Catalog Terms of Use) on *November 8, 2006*. [APX4838{Novak},¶34]  A1 already acknowledged that it saw the Subscription Terms of Use.  [APX198{Moldoff}¶11] Without authorization, A1 logged-in via usernames/passwords of CollegeSource subscribers to CollegeSource's website.  [APX4835{Novak}¶25]

**Fifth**, the California Court states, "AcademyOne avers that it had no knowledge that these documents originated with CollegeSource. (Moldoff Decl.¶8)" JN39{CA Order}]  Moldoff falsely swore "not one link directed AcademyOne to CollegeSource's main page or required any login." [APX198{Moldoff}¶8] In truth, A1 used username/passwords of CollegeSource subscribers to logon to CollegeSource's website without authorization.  [APX4835{Novak}¶25]

As shown by the California Court's opinion citing the Third Moldoff

Declaration and dismissing the California Action, Moldoff's false statements had the "natural and probable effect of interfering with the due administration of justice." *In re Grand Jury Proceeding Impounded*, 241 F.3d at 317 n.8. While it is apparent that defendant Moldoff's false declaration successfully interfered with the California Action by causing its erroneous dismissal (later reversed by the Ninth Circuit), all that is required is the "endeavor," not actual success. *United States v. Aguilar*, 515 U.S. 593, 599 (1995).

### 2. Destruction Of Over 88,000 Electronic Files In Violation Of Court Order

The district court erred by ***not even addressing*** CollegeSource's allegations that "with the intent to corruptly influence, obstruct and/or impede the due administration of justice, defendant AcademyOne and Noah destroyed or withheld log files and audit trails for the acquisition of data for AcademyOne's database . . [and] destroyed or withheld its California e-mail contacts [and] the Southern District of California would not have granted AcademyOne's third motion to dismiss if the evidence destroyed or withheld by AcademyOne had been provided to the Court." [APX450{FAC}¶¶117-119]

The deliberate destruction of documents violates 18 U.S.C. §1503. *United States v. Shoup*, 608 F.2d 950, 962 (3d Cir. 1979) ("deliberate destruction of documents under subpoena" violates §1503); *United States v. Walasek*, 527 F.2d 676,

681 (3d Cir. 1975) (same).

The district court erred by not even addressing CollegeSource's allegations that defendants destroyed documents relevant to the erroneous dismissal of the California Action. [APX450{FAC}¶¶115-119]

Now, after uncovering the destruction of over 88,000 electronic files with provocative names,[24] CollegeSource can allege an additional predicate act based upon obstruction of justice in the Pennsylvania Action.

### 3.    Injury To Business Or Property

The district court erred  in ruling CollegeSource "failed to plead a cognizable RICO injury arising from the declarations that Mr. Moldoff submitted." [APX150]

"[A]llegations of 'great expenses, delays and inconvenience . . . in its prosecution of the First Lawsuit' were a sufficient pleading of injury to business or property to give [CollegeSource] RICO standing." *Malley-Duff & Associates, Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 355 (3d Cir. 1986).

In the instant case, CollegeSource sufficiently alleges as harm "delay in enforcing CollegeSource's rights due to defendants' fraudulent misrepresentations, omissions and obstructions." [APX434{FAC},¶44(e)]   The California Action was delayed for two years during the successful Jurisdiction Appeal.   Even now,

---

[24]    See n.18.

CollegeSource's fully briefed motion for partial summary judgment on its California claims is stayed pending this appeal.

Additionally, "[l]egal expenses are concrete financial losses, 'not mere injury to a valuable intangible property interest' and are thus recoverable under RICO." *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1035 (N.D. Cal. 2004) (collecting cases). In the instant case, CollegeSource sufficiently alleges "legal fees and prejudice to claims for business injury resulting from defendants' obstruction of justice in the amount of at least $250,000.00." [APX434{FAC},¶44(f)]

### D. CollegeSource Sufficiently Alleged The Predicate Act Of Wire Fraud

"The elements of mail and wire fraud are (1) a scheme or artifice to defraud for the purpose of obtaining money or property, (2) participation by the defendant with specific intent to defraud, and (3) use of the mails or wire transmissions in furtherance of the scheme." *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012)

In the instant case, CollegeSource adequately alleged wire fraud based upon the allegation that: "Defendants' representations in the Response that they had 'removed ALL course catalog PDF files' and would 'honor your request and remove the content' were fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." [APX440{FAC}¶75];

[APX439{FAC}¶¶72-81][25]

## E.    The District Court Erred By Dismissing RICO Claims With Prejudice And Without Any Opportunity To Amend

The RICO counts should not have been dismissed in the first place and certainly not without at least one opportunity to cure.

The district court erred by ignoring CollegeSource's repeated requests to amend [APX494-499{Dismiss Opp.}] and dismissing the RICO claims **with prejudice** [APX146 {Order}] without "any declared or apparent reason." *Foman*, 371 U.S. at 182.

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but **outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion;** it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman*, 371 U.S. at 182 (emphasis added); *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010).

The RICO dismissals should be reversed, because the district court did not even attempt to justify its refusal to amend, and CollegeSource has shown it can allege additional facts.

---

[25]    CollegeSource no longer pursues RICO claims based upon wire fraud regarding a false Request for Proposal to South Carolina (FAC¶¶82-92) and a false trademark application (FAC,¶¶132-142).

## II. THE DISTRICT COURT ERRED IN DENYING COLLEGESOURCE'S MOTION TO DISMISS, STAY OR TRANSFER THE ACTION TO THE FIRST-FILED CALIFORNIA COURT

As discussed in §I.C, the first-filed California Action would not have been erroneously dismissed but for defendants' obstruction of justice, which delayed the California Action for two years while it was on appeal to the Ninth Circuit.

As a result, CollegeSource was forced to file the below action "to preserve its statutes of limitations, preserve documents in AcademyOne's possession, custody or control, and stop AcademyOne from continuing to exploit data and information taken from CollegeSource." [APX1076{Quinn}¶17] Even the district court below acknowledged "CollegeSource was within its rights to file this suit to preserve its claims given AcademyOne's refusal to toll the statute of limitations." [APX118{Order}]

After the Ninth Circuit reversed the erroneous dismissal of the California Action, the district court below erred when it refused to dismiss, transfer or stay this second-filed action in favor of the first-filed California Action. As discussed in §§II.B-F, the district court below erred in denying CollegeSource's motion and then mooting two Ninth Circuit preliminary injunction appeals concerning the issue.

This Court should reverse the district court to promote comity, stop duplicative litigation in the Pennsylvania Court and preserve resources.

### A.    Standard Of Review

An order denying a motion to transfer under 28 U.S.C. §1404(a) is reviewed for abuse of discretion. *Deleski v. Raymark Industries, Inc.*, 819 F.2d 377, 378-379 (3d Cir. 1987).

The "invocation of the [first-filed] rule will usually be the norm, not the exception. Courts must be presented with ***exceptional circumstances*** before exercising their discretion to depart from the first-filed rule." *EEOC v. University of Pennsylvania*, 850 F.2d 969, 979 (3d Cir. 1988) (emphasis added). "We have previously stated that a district court abuses its discretion in a forum non conveniens analysis when it fails to consider adequately and to determine the amount of deference due the foreign plaintiff's choice of forum (*Id.* at 45-46) or when it clearly errs in weighing the factors to be considered." *Lony v. E. I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir. 1989) *citing Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir. 1988).

### B.    The First-Filed Rule And Equity Require Reversal And That The California Action Go Forward

The district court below erred, because the first-filed rule and equity requires CollegeSource's claims to go forward in the California Court.

"Nearly fifty years ago, this court adopted what has become known as the 'first-filed' rule. We concluded that 'in all cases of federal concurrent jurisdiction, the

court which first has possession of the subject must decide it.' (Citations)" *EEOC*, 850 F.2d at 971. The *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929-930 (3d Cir. 1941) court explained important policies why a second filed-action should be transferred to the first-filed court:

> It was long ago laid down by Chief Justice Marshall as a salutary rule that "***In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it***." [*930] *Smith v. McIver*, 9 Wheat. 532, 535, 22 U.S. 532, 535, 6 L.Ed. 152. It is of ***obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals*. . . . *The economic waste involved in duplicating litigation is obvious*. Equally important is its ***adverse effect upon the prompt and efficient administration of justice***.

*Id*. (emphasis added).

"The letter and spirit of the first-filed rule. . .are grounded on equitable principles." *EEOC*, 850 F.2d at 977.

## C.     The District Court Erred By Refusing To Give Due Deference To CollegeSource's Choice Of Forum In California

The district court abused its discretion when it failed "to consider adequately and to determine the amount of deference due the foreign plaintiff's choice of forum." *Lony*, 886 F.2d 632.

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice '* * * should

not be lightly disturbed.'" *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970)

*quoting Ungrund v. Cunningham Brothers, Inc.*, 300 F. Supp. 270, 272 (S.D.Ill.1969).

"Ordinarily, a strong presumption of convenience exists in favor of a domestic

plaintiff's chosen forum, and this presumption may be overcome only when the

balance of the public and private interests clearly favors an alternate forum." *Windt*

*v. Qwest Communs. Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008) *citing Piper Aircraft*

*Co. v. Reyno*, 454 U.S. 235, 255 (U.S. 1981).

In the instant case, the district court clearly erred, because **it did not even refer**

**to CollegeSource's "choice of forum."** [APX110{Order}]    California was

CollegeSource's "choice of forum," as shown by its initial filing of its claims in

California and its successful pursuit of the Jurisdiction Appeal for the reason of

finding personal jurisdiction over A1 *in California*.

CollegeSource was forced to file the below action during the Jurisdiction

Appeal "to preserve its statutes of limitations, preserve documents in AcademyOne's

possession, custody or control, and stop AcademyOne from continuing to exploit data

and information taken from CollegeSource." [APX1076{Quinn}¶17] Even the district

court acknowledged "CollegeSource was within its rights to file this suit to preserve

its claims given AcademyOne's refusal to toll the statute of limitations."

[APX118{Order}]  As discussed in §I.C, had A1 not submitted false declarations in

-38-

the California Action, the California Action would not have been dismissed and the below action never filed.

Some district courts have held that "the deference given to a plaintiff's choice of forum is reduced when the operative facts that give rise to the action occur in another district. (Citations)" *Cameli v. WNEP-16 the News Station*, 134 F. Supp. 2d 403, 405 (E.D. Pa. 2001). In the instant case, the Ninth Circuit already "conclude[d] that ***CollegeSource's claims arise out of AcademyOne's activities in California***." *CollegeSource I*, 653 F.3d at1079 (emphasis added).

The district court also erred by binding CollegeSource to an on-the-spot, informal, in-chambers, untranscribed response to a court question by one of CollegeSource's counsel (without consultation with CollegeSource and before any Ninth Circuit opinion had issued) to the effect that CollegeSource "intended to continue litigating this case no matter the outcome of the appeal." [APX118-119{Order}]

The formal record does not reflect any waiver by CollegeSource of its choice of forum in California or abandonment of its Jurisdiction Appeal regarding personal jurisdiction. Waiver is the "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 n.11 (3d Cir. 2012) (finding

-39-

waiver where document signed by both parties, and both parties and counsel were aware of the significance thereof).

In the instant case, there was no intentional and knowing waiver by CollegeSource of its choice of forum in California and its pending Jurisdiction Appeal. First, there was no formal notice or stipulation by CollegeSource waiving its rights pursuant to Eastern District of Pennsylvania Local Rule 7.4 requiring notices "in writing" and stipulations "written and signed by counsel of record." Second, there was no knowing waiver by CollegeSource. The District Court acknowledged "CollegeSource claims that counsel had not yet discussed the issue with CollegeSource when he made the [untranscribed and informal] oral representation to the Court in the pre-hearing conference." [APX119{Order} APX1222{Woods}¶10] Third, the pleadings in the Pennsylvania Action filed after counsel's informal, untranscribed, on-the-spot statement, do not memorialize CollegeSource waiving its right to proceed in the California Action if the Ninth Circuit reversed (as it did months later in *CollegeSource I*) and waiving its right to proceed with its three California law claims. [APX1223{Woods}¶11-13] Fourth, neither the district court nor A1 has explained any supposed reasonable "reliance" on the informal statement by one of CollegeSource's counsel.

### D.    No "Exceptional Circumstances" Justified Departure From The First-Filed Rule

The district court erred, because no "exceptional circumstances" justified departing from the first-filed rule. *EEOC*, 850 F.2d at 979 ("rule will usually be the norm, not the exception. Courts must be presented with ***exceptional circumstances*** before exercising their discretion to depart from the first-filed rule. . .")  This Court explained that "exceptions to the rule are rare." *Id.* at 976 (emphasis added).

The district court erred in declining to follow the first-filed rule upon its holding that the "proceedings in the second-filed action have developed considerably further than in the first-filed California Action." [APX117{Order}]

In support of a "proceeded further exception," the district court cited *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 120 (8th Cir. 1985) and *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 749-50 (9th Cir. 1979).  In *Church of Scientology*, the Ninth Circuit expressly considered the fact that the second-filed action had proceeded through **"an appeal, and a remand"** in declining to apply the first-filed rule. 611 F.2d at 750.  The Ninth Circuit has never listed a "proceeded further" exception as a "typical" exception to the first-to-file rule.

> The circumstances under which an exception to the first-to-file rule typically will be made include bad faith (citations), anticipatory suit, and forum shopping (citations).

*Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (citations

omitted).  The Ninth Circuit's later decision in *Alltrade* (1991) did not cite *Church of Scientology* (1980) to list any "progressed further" exception to the first-to-file rule which indicates that any "progressed further" exception either does not exist or is limited to the very unique facts of the *Church of Scientology* case.  Thus, if *Church of Scientology* stands for anything, it stands for the proposition that a case that has proceeded through an appeal and remand (*i.e.* California Action) has "proceeded further" than a parallel proceeding (*i.e.* Pennsylvania Action) that has not.

Similarly, in *Orthmann*, 765 F.2d 119 (8th Cir. 1984) the second-filed action had been dismissed on the merits, appealed, reversed, and remanded.  The Eighth Circuit declined to apply the first-filed rule because "the decision by the Seventh Circuit means that the controversy is now further developed in the [second-filed] Wisconsin district court." *Orthmann*, 765 F.2d at 121.  In this case, as in *Church of Scientology* and *Orthmann*, application of the first-filed rule should be applied in such a way as to not render one completed and two mooted appellate proceedings in the Ninth Circuit meaningless.

Accordingly, this Court should rule that there is no "proceeded further" exception to the first-filed rule or limit any "proceeded further" exception to completed appellate proceedings at the time a transfer motion is filed.  At minimum, the existence of an appeal and remand in the Ninth Circuit should be weighed heavily

in any "proceeded further" analysis.

The district court's preliminary injunction ruling is not relevant in determining whether the below action was "further developed" than the California Action, because it is not a final or binding determination on the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added and citations omitted). Any "proceeded further" exception must disregard a defendant's unsuccessful challenges to a complaint before an answer is filed because they delay the filing of an answer.

Any procedural events occurring after CollegeSource filed its motion to dismiss, transfer or stay should also be disregarded for any "proceeded further" exception. A1 should not be allowed to tilt the scales on any "proceeded further" exception through rushing to file motions. The Ninth Circuit issued the *CollegeSource I* opinion on August 8, 2011. That same day, CollegeSource promptly requested A1's consent to send a joint letter to the Court regarding the *CollegeSource I* opinion and to alert the court that "[po]tential procedural issues include administrative suspense, transfer, stay, dismissal, amended pleadings, motion practice and further discovery" [APX1179{draft letter}]

***At the time CollegeSource I was issued***, no discovery motions had been filed in the below action and the discovery cutoff had not passed. [APX1077{Quinn}¶22] In response to CollegeSource's letter, A1 rushed to file three discovery motions on

August 15, 2011. A1 also declined to consent to the joint letter to the court and opposed any request for a stay. [APX1181{A1 letter} and APX1182-1183{letter to court}] In eventually denying CollegeSource's motion to dismiss, transfer or stay, the district court bootstrapped its "proceeded further" determination, in part, by stating, "the Court has decided . . a motion for sanctions, a motion to strike affirmative defenses, and six discovery motions." [APX118{Order}] These post-filing procedural events, which were in the court's exclusive control while CollegeSource's transfer request was pending, cannot fairly be held against CollegeSource.

In the event the Court is inclined to consider post-transfer request procedural events, it must consider the fact that both parties have fully briefed motions for summary judgment pending in the California Action [JN53{Briefing Order}] Because A1 has obtained additional discovery regarding CollegeSource's IP address evidence in the California Action and has supplemented its expert report regarding the same, the California Court stands poised to rule upon the merits of CollegeSource's claim upon all the evidence. [JN93{stay pending appeal order}]

Any "proceeded further" exception should take into account any claims not asserted in the second-filed action. With the exception of RICO,[26] the first-filed

---

[26]     Because the Pennsylvania Court erroneously dismissed the RICO claims with prejudice, CollegeSource could not assert RICO claims in the first-

California action asserts *all* of CollegeSource's claims, including three California law claims[27] never asserted in the Pennsylvania Action. These California claims are some of CollegeSource's strongest claims, with different elements and remedies than CollegeSource's other claims. The Ninth Circuit, in *CollegeSource I,* implicitly held that CollegeSource's misappropriation claim presented a basis for recovery. *CollegeSource I*, 653 F.3d at 1076 ("We focus on CollegeSource's misappropriation claim, which most readily supports the exercise of specific jurisdiction.")

The district court erred by not even considering the impact of CollegeSource's three California claims on the "proceeded further" analysis. As a matter of law, the second-filed action, below, can *never* be considered to have "proceeded further," because only *some* of CollegeSource's claims are asserted below. Certainly, the existence of the three California claims unassertable in the Pennsylvania Action should weigh heavily in any "proceeded further" analysis.

Because any discovery obtained in the below action can be used on the same claim asserted in the first-filed California Action, such discovery is irrelevant to whether the below action has "proceeded further." To the extent the amount of discovery taken as a result of each action is relevant, when *CollegeSource I* issued

---

filed California action.

[27]    *See* n.4.

twenty-four (24) depositions had been taken in the California Action and the A1

Action. [APX1220{Woods}¶2][28]  ***No depositions had been taken in the below***

***action***. [APX1220{Woods}¶3]

### E.    The District Court Erred In Ruling That Duplicative Common Claims Could Go Forward In Two Separate Courts

The district court erroneously held: "Declining to apply the first-filed rule

presents the potential problem of duplicative litigation, but the problem is

of CollegeSource's own making." [APX118{Order}] In truth, A1's successful

obstruction of justice necessitated the filing of the Pennsylvania Action.

The law is crystal clear that duplicative litigation should be avoided.  *EEOC*,

850 F.2d at 972 ("general principle is to avoid duplicative litigation"); *Continental*

*Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("[t]o permit a situation in

which two cases involving precisely the same issues are simultaneously pending in

different District Courts leads to the wastefulness of time, energy, and money that

§1404(a) was designed to prevent.").

### F.    The District Court Erred By Wasting Judicial Resources And Nullifying Ninth Circuit Proceedings

The district court erroneously ruled: "To dismiss, transfer, or stay at this point

---

[28]  In the Pennsylvania Action, the Stipulated Protective Order provides that discovery obtained in the Pennsylvania Action could be used in the California Action. [APX134(Order),¶8]

would be a waste of the Court's efforts." [APX121{Order}]

"The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank." *EEOC*, 850 F.2d at 971. "The principle that when the jurisdiction of a court has attached, it must be respected as exclusive until exhausted, is a rule of comity, having a wide application in civil cases. . ."

The district court erred by showing no comity or deference to the higher ranking Ninth Circuit. Since the "first-filed rule encourages sound judicial administration and promotes comity among federal [district] courts of equal rank," the deference due the Ninth Circuit should be at least as high, if not higher. *EEOC*, 850 F.2d at 971. *Peckham v. Henkel*, 216 U.S. 483, 486 (1910); *Morse v. United States*, 267 U.S. 80, 82 (1925). First, by refusing to transfer the second-filed action to the first-filed California court, the district court completely nullified and rendered meaningless the Ninth Circuit's *CollegeSource I* opinion that held that A1 could properly be sued in California. Second, the district court knowingly mooted CollegeSource's two pending expedited Ninth Circuit preliminary injunction appeals concerning the first-filed rule by granting summary judgment for A1. CollegeSource filed its Ninth Circuit opening brief on January 12, 2012 ***before*** A1 filed its opening summary judgment brief on February 27, 2012. CollegeSource repeatedly requested the district court to not moot the pending appeals. Showing no deference, the district

court entered judgment on October 25, 2012. On A1's motion, the Ninth Circuit then

dismissed the two preliminary injunction appeals as moot.

## III.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR A1

### A.    Standard Of Review

The district court's grant of summary judgment is subject to plenary review and

all inferences must be viewed in the light most favorable to CollegeSource. *Berner*

*Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975, 978 (3d Cir. 1993).

The district court's decisions regarding its denial of CollegeSource's motion

to supplement its summary judgment opposition and/or reopen discovery, grant of

A1's motion for leave to amend its Answer to assert Copyright preemption, denial of

CollegeSource's motion for leave to strike A1's new preemption defense, and

decision regarding waiver of A1's affirmative defense are all reviewed for an abuse

of discretion. *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315 (3d Cir. 2012)

(motion to supplement/reopen discovery); *Sharp v. Johnson*, 669 F.3d 144, 158 (3d

Cir. 2012) (waiver); *Douglas v. Owens*, 50 F.3d 1226, 1235 (3d Cir. 1995) (leave to

amend); *United States v. $31,852.38 in United States Currency*, 183 Fed. Appx. 237,

240 n.3 (3d Cir., June 6, 2006) (motion to strike).

"The district court abuses its discretion if its decision rests upon a clearly

erroneous finding of fact, an errant conclusion of law, or the improper application of

law to fact." *Ragguette*, 691 F.3d at 322. "[W]hether an incorrect legal standard has been used is an issue of law to be reviewed de novo." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir. 2009). "An abuse of discretion may also occur when 'no reasonable person would adopt the district court's view.'" *Id*.

### B.     This Court Can Vacate The SJ Order Without Ruling On The Merits Of The Claims Pursuant to the First-Filed Rule And Equity

As discussed in §II.B, pursuant to the first-filed rule and equity, the California Court should have decided all motions after the Ninth Circuit's *CollegeSource I* opinion and after CollegeSource requested that the Pennsylvania Action be dismissed, stayed or transferred.  Had the district court below promptly granted CollegeSource's request, then the SJ Order and interlocutory orders[29] at issue on this appeal would have been decided by the California Court instead of the Pennsylvania Court.

Although no case was found directly on point, it appears to be within the Court's broad equitable and inherent powers to dismiss or transfer the Pennsylvania Action *nunc pro tunc*[30] and vacate the SJ Order and interlocutory orders at issue on

---

[29]      *See* n.1.

[30]      "The Latin phrase 'nunc pro tunc' means 'now for then' and 'permits acts to be done after the time they should have been done with a retroactive effect.' *Barden v. Keohane*, 921 F.2d 476, 478 n.2 (3d Cir. 1990). Black's Law Dictionary defines 'nunc pro tunc' as '[h]aving retroactive legal effect through a court's inherent power.' 1174 (9th ed. 2009)." *Sarango v. AG of the United States*, 651 F.3d 380, 383 (3d Cir. 2011).

this appeal.

> "It is well settled that a bankruptcy court has the power to vacate or
> modify its orders, as long as it is equitable to do so." *Big Shanty Land
> Corp. v. Comer Properties, Inc.*, 61 Bankr. 272, 282 (N.D. Ga. 1985).
> . . . *In re Radco Merchandising Services, Inc.*, 111 Bankr. 684, 689
> (N.D. Ill. 1990) ("Like a court of equity, the bankruptcy court has the
> power to amend, modify, or vacate its earlier orders.")

*In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 265 (3d Cir. 1991). Vacating such

orders is equitable in that the California Court, rather than the Pennsylvania Court,

should consider the issues raised by those post transfer request orders.

> **C.    This Court Should Summarily Reverse The SJ Order
> Without Ruling On The Merits Of The Claims, Because
> The District Court Erroneously Prevented CollegeSource
> From Submitting Crucial Evidence And Failed To Apply
> Both *Pioneer* And *Pennypack***

This Court should summarily reverse the SJ Order without ruling on the merits

of CollegeSource's claims based upon new or excluded evidence.   *Szubak v.

Secretary of Health & Human Services*, 745 F.2d 831, 833 n. 1 (3d Cir. 1984)

("Because of our decision to remand for the consideration of new evidence we need

not address appellant's claims of errors by the ALJ"); *Padillas v. Stork-Gamco, Inc.*,

186 F.3d 412, 416 (3d Cir. 1999) (where evidence exclusion order vacated and

summary judgment reversed "we need not consider other potential issues")

This Court should also summarily reverse the SJ Order without ruling on the

merits of CollegeSource's claims based upon the district court's use of incorrect legal

criteria and failure to make findings. *Berner Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975, 983-984 (3d Cir. 1993) ("Because we reverse the district court's analysis based upon its use of incorrect legal criteria, we need not address whether the district court improperly excluded evidence, as appellants allege."); *Shlensky v. Dorsey*, 574 F.2d 131, 151 (3d Cir. 1978) ("case remanded to permit the required findings to be made and the basis"); *Dunn v. United States*, 842 F.2d 1420, 1435 (3d Cir. 1988) (order vacated and remanded where "district court did not make adequate findings of fact as our jurisprudence requires").

### 1. Denial Of Motion To Supplement Summary Judgment Opposition With Newly Uncovered Evidence

While A1's motion for summary judgment was pending, CollegeSource uncovered crucial evidence that: (1) A1 and its China Team hacked into CollegeSource's server logging in, without authorization, via CollegeSource's paying subscribers' usernames/passwords; (2) A1 accessed CollegeSource's Website Terms of Use multiple times; and (3) A1 deleted over 88,000 electronic files from its server prior to its production in discovery to CollegeSource, including files with very provocative names. [APX4952-4956] This evidence was not uncovered earlier due to A1's affirmative wrongful conduct.  [APX4824-4839{Novak}¶¶1-34]

This evidence was highly relevant, if not dispositive, as it established that **the IP addresses of A1 and its China Team "hacked" into CollegeSource's server**

**using third party logins**. [APX4834{Novak}¶¶24-27 and 4934-4946{Ex. H - catalogs accessed}] This clearly established "unauthorized access" in violation of the CFAA and breach of CollegeSource's numerous Terms of Use. (§III.D.1-2)

The newly uncovered evidence also established that **A1's IP address accessed CollegeSource's Website Terms of Use on November 8, 2006 and several times thereafter**. [APX4838{Novak)}¶34 and APX5078{Search Results}]. A1's actual knowledge of CollegeSource's Terms of Use is highly relevant to CollegeSource's claim for violation of the CFAA and breach of contract. (§§III.D.1-2)

The evidence included the Microsoft Change Journal that indicated A1 had deleted over 88,000 files from the server produced in discovery. [APX4836{Novak}¶¶28-33] Many of these deleted files had highly relevant, provocative names.[31] The over 88,000 deleted files are likely relevant to all claims, but certainly support spoilation sufficient to raise a triable issue of fact.

CollegeSource promptly informed A1 and the district court, which eventually held a conference call in which no witnesses were present, no testimony was taken, and no evidence was presented. [APX1886{letter}, APX4796{Quinn} at¶14 {Quinn},APX1889-1909{Transcript}]. Pursuant to the district court's directive, CollegeSource filed a formal motion to supplement and reopen discovery, and

---

[31]    *See* n.18.

attached sworn, admissible evidence establishing CollegeSource's "excusable neglect" in not presenting the evidence sooner. [APX1911-1916{Bandemer}, 1917-1922{Weil} 4793-4822{Quinn} 4823-4933{Novak}]  Less than a week later, the district court simply denied CollegeSource's request ***without holding oral argument or even requiring A1 to respond***. [APX91{**Supp. Order**"}].

CollegeSource moved the district court to allow CollegeSource to supplement its SJ Opposition and reopen discovery under Fed R. Civ. Proc 6(b)(1)(B), which provides "when an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect."  CollegeSource's Motion was also independently grounded in Fed. R. Civ. Proc. 16(b)(4), which provides that a scheduling order may be modified "for good cause shown and with the judge's consent." Fed. R. Civ. Proc. 16(b)(4).  Like Rule 6(b)(1)(B), Rule 16(b)(4) is satisfied upon a showing of "excusable neglect." *Williams v. Sullivan*, 2011 U.S. Dist. LEXIS 56414 at *14 (D.N.J. 2011), *quoting Newton v. Dana Corp., Parish Div.*, 1995 U.S. Dist. LEXIS 8473 at *3 (E.D. Pa. 1995).  CollegeSource contends that there was no neglect at all, just CollegeSource's victimization by A1's obstruction of justice.

This Court can summarily reverse the Supp. Order (excluding newly uncovered evidence) and the SJ Order (not considering excluded evidence), because the district

court applied an incorrect legal standard and failed to consider and make findings on

the factors set forth in *Pioneer Inv. Serv. Co. v. Brunswick Assocs.*, 507 U.S. 380,

395 (1993) and *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894,

905 (3d Cir. 1977).

> **a.    The District Court Gave CollegeSource's Motion Only Cursory Consideration And Failed To Apply The *Pioneer* Factors**

Requests under Fed. R. Civ. Proc 6(b)(1)(B) and 16(b)(4) must be given more

than cursory consideration. In *Pioneer*, the Supreme Court interpreted the term

"excusable neglect" and set forth numerous factors that a district court **must**

consider. *Pioneer*, 507 U.S. at 395 (1993).    These mandatory factors were

summarized by this Court in *Drippe v. Tobelinski*, 604 F.3d 778 (3d Cir. 2010):

> Under *Pioneer*, the excusable neglect inquiry **must** consider "all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

*Id*. at 783 (emphasis added).    While *Pioneer* was decided in the context of a

bankruptcy case, the "*Pioneer* factors apply to all excusable neglect inquiries

mandated under the Federal Rules of Civil Procedure." *Id*., *citing In re O'Brien Envtl.*

*Energy, Inc.*, 188 F.3d 116, 125 n.7 (3d Cir. 1999).

Given the mandatory nature of the Supreme Court's *Pioneer* factors, a district

court abuses its discretion as a matter of law when it finds a party has failed to establish "excusable neglect" without reference to the four-factor balancing standard. *Ragguette*, 691 F.3d at 319 (district court had abused its discretion by finding the plaintiff failed to establish excusable neglect "without an opinion, without a reason, and more importantly, without reference to the *Pioneer* four-factor balancing standard."), *quoting In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 154 (3d Cir. 2005); *Drippe*, 604 F.3d at 785 ("We do not evaluate the District Court's purported finding of excusable neglect because . . . .the record is devoid of evidence suggesting that such a finding was made.")

This Court can summarily reverse the Supp. Order (and consequently the SJ Order), because the district court erred. First, **the district court's two (2) page cursory Supp. Order failed to mention, let alone consider, the mandatory *Pioneer* factors**. [APX91{Supp. Order}][32]  This, alone, requires that the district court's erroneous Order be reversed. *Ragguette*, 691 F.3d at 319; *Diet Drugs*, 401 F.3d at 154.  Second, since the Supp. Order does not even mention the word "excusable neglect," the record is "devoid of evidence suggesting that such a finding was made." *Drippe*, 604 F.3d at 785. Third, the district court failed to acknowledge or discuss *any* of the evidence CollegeSource submitted in support of its motion.

---

[32] CollegeSource had cited to and listed the *Pioneer* factors in support of its motion. [Docket 222-1{Memorandum} at 16-17].

Instead, it improperly relied solely upon the statements of counsel during a pre-filing conference call, which are not evidence. APX91{Supp. Order}.[33]

> **b.    The District Court Applied The Wrong Standard**

This Court can summarily reverse the Supp. Order (and consequently SJ Order), because the district court applied an incorrect standard. *Hydrogen Peroxide*, 552 F.3d at 312.

The district court erroneously denied CollegeSource's motion because it found that CollegeSource had not established that it "**could not have done** years ago all of the research it now relies on." [APX92{Supp. Order} (emphasis added)]  However, impossibility of compliance with the Rules is not required for a showing of "excusable neglect."  Instead, the Supreme Court held in *Pioneer* that excusable neglect "is a somewhat 'elastic concept' and is **not limited strictly to omissions caused by circumstances beyond the control of the movant**." *Pioneer*, 507 U.S. at 392 (emphasis added).  Instead, the Court held that "excusable neglect" encompasses "late filings caused by inadvertence, mistake, or carelessness." *Id*. at 388; *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (a

---

[33]*Gregory v. Depte*, 896 F.2d 31, 34-35 (3d. Cir. 1990) (statement of counsel "is, mildly put, not evidence"); *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("[A]rguments and statements of counsel are not evidence and do not create issues of material fact"); Third Circuit Model Jury Instruction 1.5 (Preliminary Instructions - Evidence).

showing of "excusable neglect" requires "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.").  While using the term of art "excusable neglect," CollegeSource contends it was not negligent at all but was the innocent victim of A1's obstruction of justice.

### c.    The District Court Abused Its Discretion Under The *Pennypack* Factors

In this Court's opinion in *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012), the Court held that the standard for reviewing a district court's "exercise of discretion to control the discovery process and a refusal to allow submission of additional evidence" should be evaluated under the five factor test set forth in *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d at 905. *ZF Meritor*, 696 F.3d at 296.  The *Pennypack* factors consider:

> (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence.

*ZF Meritor*, 696 F.3d at 297, *quoting Pennypack*.

**"The importance of the evidence is often the most significant factor."** *Id.*[34]

CollegeSource's evidence that IP addresses associated with A1 and its China Team accessed the Website Terms of Use,[35] downloaded 576 specific PDF catalogs on particular dates[36] including through unauthorized logins via usernames/passwords of CollegeSource's paying subscribers[37]is of crucial importance on CollegeSource's claims for violation of the CFAA, breach of contract and unjust enrichment.

Exclusion of newly uncovered evidence is discouraged. *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 116 (5th Cir. 1993) (explaining that a ***continuance***, as opposed to exclusion, is the "***preferred means***" of dealing with a party's attempt to offer new evidence after the time for discovery has closed). The district court below also could have just transferred the case.

---

[34] As noted above, the district court failed to apply the proper "excusable neglect" standard to CollegeSource's motion and failed to consider the mandatory *Pioneer* factors. Accordingly, there is no finding regarding excusable neglect for the Court to review. However, in the event the Court wishes to inquire into excusable neglect, the arguments and points relevant to the *Pennypack* abuse of discretion factors are equally applicable to the *Pioneer* excusable neglect factors.

[35] [APX4838(Novak) ¶34, APX5078 (Search Results)]

[36] [APX4835(Novak)¶¶24-25, APX4934-4946 (Reconciliation)]

[37] [APX4834(Novak)¶¶23-25, Ex. G (Excel native, tab 66.252.98.234 at Rows 115 and 118) Ex. G (native Excel file at: sheet 666.252.98.234, cell N1952); sheet A1ChinaTeam at Rows 69-72; sheet A1ChinaTeam at Columns G and N (search for references to "upauth", starting at Row 599); sheet A1ChinaTeam, Row 599)

This Court can also summarily reverse the Supp. Order (and consequently SJ Order), because the district court failed to cite and make findings regarding the *Pennypack* factors. Further, as to *Pennypack* factors (1)-(3), A1 has already deposed Mr. Novak and submitted an expert report in the California Action regarding this evidence. [JN61{Novak depo},JN62-87{objections to expert report}] As to factor (4), CollegeSource did not act in bad faith. [APX4827{Novak}¶¶3-19, APX4796{Quinn}¶10-14]

## 2.    Exclusion Of Novak Summary Of Evidence

The Declaration of Stan Novak [APX3769–4771]{**"Summary"**} was critical to CollegeSource's opposition to A1's motion for summary judgment, because it summarized voluminous documents showing A1 took specified catalogs from CollegeSource. Fed. R. Evid. 1006. *Mulholland v. Hoffer*, 2007 U.S. Dist. LEXIS 31952 (E.D. Pa. 2007) (allowing Rule 1006 summary where defendant "had copies of all the underlying records upon which the summary chart was based") [APX1737{Quinn},¶2]

The underlying documents summarized in the Summary were absolutely admissible, just presented in summary form. At trial, it is much more efficient to admit a summary subject to cross examination than to recreate each line of the summary by live testimony as to summarized information from voluminous

documents. The district court's order granting summary judgment erroneously did not even refer to the Summary. [APX 34-90{SJ Order}] The district court then entered judgment for A1. [APX33{Judgment}]

CollegeSource filed its notice of appeal [APX30-32], and the district court was divested of jurisdiction. *United States v. Pelullo*, 14 F.3d 881, 906 (3d Cir. 1994) ("Generally, the filing of a notice of appeal divests the district court of jurisdiction...") Without power or permission from this Court, the district court then issued an Order [APX28] erroneously purporting to rule on A1's motion to exclude the Summary. This void Order is silent as to what prompted its late issuance and may even raise suspicions of partiality.[38] A1 did not object to portions of the Summary and certainly the underlying documents summarized create a triable issue of fact.

The Court should consider the Summary on appeal and reverse the SJ Order based upon triable issues of fact.

### 3. Denial Of Discovery Prevented CollegeSource From Presenting Evidence

The district court denied certain discovery orders that prevented CollegeSource from submitting further facts in opposition to summary judgment. The district court's

---

[38] *Pelullo*, 14 F.3d at 907 ("Exigent circumstances may justify a late memorandum, but **delayed filing may raise suspicions of partiality**.") (emphasis added). It should be noted that, while the district court indicated that it had trouble understanding the Summary [APX28-29], it did not request supplemental briefing from CollegeSource or to examine Mr. Novak.

discovery orders should be reversed, so CollegeSource will not be foreclosed from obtaining relevant evidence on the ground that CollegeSource unsuccessfully moved to compel discovery.  Specifically, CollegeSource should be allowed to mirror A1's hard drives [AA181-187{order denying mirror}] and A1 should produce native files and not "cherry pick" responsive documents based upon relevance objections. [AA125{order allowing A1 to decide what documents are "relevant" and to not produce documents}[39]]

### D.    This Court Can Reverse The SJ Order On The Merits Of The Claims

Due to the Court's word limitation order, CollegeSource can only briefly highlight some of the district court's errors that each warrant reversal of the SJ Order on the merits.

### 1.    Count 3: The District Court Erred In Granting Summary Judgment To A1 On CollegeSource's Claim For Violation Of The CFAA

The district court granted summary judgment to A1 on CollegeSource's claim for violation of the United States Computer Fraud and Abuse Act, 18 U.S.C. §1030 (**"CFAA"**) upon the erroneous finding that "CollegeSource has not produced evidence of acts of unauthorized access, or access exceeding authorization, to CollegeSource's computers." [APX65{SJ Order}]

---

[39]    CollegeSource's moving papers specify the requests and are included due to the language of the order. [APX5080-5116]

"The statute does not define the term 'without authorization.'"    *Advanced Fluid Sys. v. Huber*, 2014 U.S. Dist. LEXIS 82562 (D. Pa. 2014)  "The Third Circuit has yet to address the meaning of 'without authorization.'" *Id*.

"A majority of circuit courts have taken a broader view of 'without authorization'" that prohibits "unauthorized *use*" as opposed to the narrower minority view that merely prohibits "unauthorized *access*.'" *Id*. (emphasis in original). For the reasons set forth by the First, Fifth, Seventh and Eleventh Circuit opinions cited in *Advanced Fluid Sys*., this Court should follow the broader majority view.

In the instant case, the use/access distinction is only important with respect to a small fraction of catalogs that A1 took via Catalink where A1 had public ***access*** to the catalogs via each Catalink subscriber's website, but the Catalog Terms of Use, Website Terms of Use and Subscription Agreement Terms of Use restricted ***use*** to personal, non-commercial uses.  [APX1363{Cooper}¶9-11]

The entire SJ Order is predicated upon the erroneous finding that A1 ***only*** downloaded CollegeSource's Digitized Information through Catalink. [APX44{SJ Order} ("The 783 CollegeSource PDFs had been obtained by [China Team] through CollegeSource's CataLink service.")]  This ignores essentially *all* of the evidence in opposition to A1's motion.

It is undisputed that **only 110 schools have ever subscribed to CataLink**.

[APX2597,2602-260{ Rog1-Catalink Subscribers}][40] In 2007, when A1's "collection efforts" were in full swing, only 75 schools were using CataLink. *Id*.  Under the broader "unauthorized use" view, this small fraction of catalogs that A1 took through Catalink supports a CFAA violation, but the narrower "unauthorized access" view would not.

Most of the catalogs that A1 took did not come from Catalink, so those catalogs support a CFAA violation under the "unauthorized access" or "unauthorized use" views.  At a minimum, it is ***impossible*** for at least 1,030 of the catalogs in dispute to have been accessed through Catalink, because the schools with respect to those catalogs ***never*** used Catalink to publish their catalogs.  The 1,030 number comes from a simple comparison of Catalink customers [APX2597, 2602-2604{Rog1-Catalink Subscribers}] with the 1,374 catalogs that A1 accessed identified in the summary judgment opposition. [APX3770{Novak}¶4, APX3787-3847{Ex. A-Summary of 1,374 catalogs accessed}] A chart showing the comparison is attached hereto.

The SJ Order should be reversed as to the CFAA claim, because there is a triable issue of fact that A1 did not have authorized access to at least 1,030 non-Catalink catalogs in A1's possession.  In its discovery responses, A1 took the position

---

[40] The referenced exhibit lists all of the Catalink subscribers along with the years they subscribed.

that "[i]t is not possible for Defendant to identify the specific URLs from which Defendant derived the course descriptions in its production database for each of the last six years." [APX1604{A1 Response 14}]  CollegeSource presented evidence in its supplement that A1 gained unauthorized access through usernames/passwords of CollegeSource subscribers.  [APX4835{Novak}¶25]

### 2.    Count 4: The District Court Erred In Granting Summary Judgment On CollegeSource's Claim For Breach Of Contract

### a.    A1 Breached The Subscription Terms Of Use

The district court erroneously concluded that A1 did not breach the Subscription Terms of Use based on the false assumption that *all* of A1's data acquisition from CollegeSource's server was through Catalink. [APX60]. As shown in III.D.1, only a small fraction of catalogs A1 took without authorization could have come from Catalink.

Further, the district court improperly construed the Subscription Terms of Use narrowly against CollegeSource when it held, as a matter of law, that the term "any other electronic service" excludes Catalink. [APX2773-3427{Exs.42-44 - Subscription Terms of Use}].  The SJ Order should be reversed  because of the reasonable interpretations that Catalink falls within CollegeSource Online (CSO) or at least as an "other electronic service."  "To affirm a grant of summary judgment on

-64-

an issue of contract interpretation,[the Court] must conclude that the contractual language is **subject to only one reasonable interpretation**." *Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 420-21 (3d Cir. 1999) (emphasis added). If the Court "determines that a given term in a contract is ambiguous, then the interpretation of that term is a question of fact for the trier of fact to resolve in light of the extrinsic evidence offered by the parties in support of their respective interpretations." *Id*. at 421.

### b.    The Catalog Terms Of Use And Website Terms Of Use Are Enforceable Against A1

The district court incorrectly ruled that the Catalog and Website Terms of Use were unenforceable against A1 because, according to the court, a "**reasonable party** reading the documents would not be aware of the contractual nature of the documents." [APX59{SJ Order}] The SJ Order must be reversed because there are triable issues of fact that A1 (as opposed to a "reasonable party") understood the terms were enforceable. *TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 260 (2012) ("when interpreting the language of a contract, this Court's goal is to ascertain the intent **of the parties** and give it effect") (emphasis added). A1 is CollegeSource's competitor that had engaged in licensing negotiations with CollegeSource for the very information it took. A1 had been served with a cease and desist letter and lawsuits regarding the subject matter of the Terms of Use, which A1

continued to use until after the below action was filed.  A1 clicked on the Website

Terms of use both before and after the cease and desist letter.

[APX4838{Novak}¶34,5078{Search Results}]

The district court also erred in finding that A1 did not assent to the terms.

Regarding the requirement of assent, "[i]t is standard contract doctrine that when a

benefit is offered subject to stated conditions, **and the offeree makes a decision to**

**take the benefit <u>with knowledge of the terms of the offer</u>**, the taking constitutes an

acceptance of the terms, which accordingly become binding on the offeree." *Cairo,*

*Inc. v. Crossmedia Services, Inc.*, 2005 U.S. Dist. LEXIS 8450 at*12-13 (N.D. Cal.

2005), *citing Register.com,*, 356 F.3d at 395; *Southwest Airlines Co. v. BoardFirst,*

*L.L.C.*, 2007 U.S. Dist. LEXIS 96230 at *19-*20 (N.D. Tex. 2007) (same).[41]  All that

---

[41]     *Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*, 421
F.3d 981, 987 (9th Cir. 2005) (restrictions of use valid because consumers "had
notice of the restrictions on use and had a chance to reject the condition"); *ProCD,
Inc. v. Zeidenberg*, 86 F.3d 1447, 1452 (7th Cir. 1996) (finding "[a]ny buyer
finding such a demand can prevent formation of the contract by returning the
package, as can any consumer who concludes that the terms of the license make
the software worth less than the purchase price"); *Cairo,* 2005 U.S. Dist. LEXIS
8450 at *12-*13 ("Cairo's visits to CMS's web sites with knowledge of CMS's
Terms of Use constituted acceptance of the terms, which accordingly are binding
on Cairo"); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997)
("Practical considerations support allowing vendors to enclose the full legal terms
with their products"), *cert. denied*, 522 U.S. 808; *In re Samsung Elecs. Am., Inc.*,
67 U.C.C. Rep. Serv. 2d (Callaghan) 794 at *13-*14 (D.N.J. 2008) ("various
courts have approved the inclusion of licenses, additional warranties and
limitations, and other contractual terms on the inside of product packaging").

is required to form a binding contract is A1's use after having the "opportunity" to review the Terms of Use. *ProCD, Inc.*, 86 F.3d at 1452 (finding "ProCD proposed a contract that a buyer would accept by using the software after having **an opportunity to read the license at leisure**") (emphasis added); *Drew*, 259 F.R.D. at 462 n.22 ("Courts considering browsewrap agreements have held that 'the validity of a browsewrap license turns on whether a website user has **actual or constructive knowledge** of a site's terms and conditions prior to using the site.'") (emphasis added).    The SJ Order must be reversed, because there is a triable issue of fact that A1 made the decision to take the benefit of CollegeSource's Digitized Information with knowledge of the restrictions placed thereon by CollegeSource.  A1 saw the Catalog Terms of Use when it scraped each catalog [APX802:24-88:11{Novak}]  and clicked on the Website Terms of Use multiple times. [APX4838{Novak}¶34,APX5078{Search Results}]

3.    **Count 5: The District Court Erred In Granting Summary Judgment To A1 On CollegeSource's Claim For Unjust Enrichment**

The district court erroneously granted A1 summary judgment on CollegeSource's claim for unjust enrichment on the grounds of preemption.

a.    **A1 Waived The Affirmative Defense Of Copyright Preemption And Should Not Have Been Allowed To Amend Its Answer**

A1 waived its federal preemption affirmative defense by not raising it in its answer.

Federal preemption is an affirmative defense. *See, e.g., Aaron v. Wyeth*, 2010 U.S. Dist. LEXIS 14581 at *8 (W.D. Pa. 2010); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG*, 510 F.3d 77, 102 (1st Cir. 2007), cert. denied, 129 S. Ct. 58, (2008). "An affirmative defense which is neither pleaded as required by Rule 8(c) nor made the subject of an appropriate motion under Rule 12(b) is waived." *Systems, Inc. v. Bridge Elec. Co.*, 335 F.2d 465, 466 (3d Cir. 1964).

The district court abused its discretion by granting A1's motion for leave to amend its answer [APX23{Dkts 196 and 203}] ***after*** discovery had closed and ***after*** CollegeSource filed its opposition to summary judgment [APX21{Dkt.184}] Where a party seeks to amend its pleadings after a deadline set by court order, the decision whether to allow the amendment is controlled by Rule 16(b), which requires a showing of "good cause." *Briggs v. Air & Liquid Sys. Corp.*, 2012 U.S. Dist. LEXIS 29075 at *12-*13 (E.D. Pa. 2012). The "good cause" standard applies to A1's request to amend, because it was filed on April 30, 2012 - well after both the discovery and motion cutoffs. [APX126{Scheduling Order},APX23{Docket Entry

-68-

196}]

The district court abused its discretion because A1 **failed to offer any justification** for its failure to assert the affirmative defense of copyright preemption.[42] The district court did not cite to *any* evidence or make *any* findings regarding A1's failure to raise the issue of preemption, let alone a finding of "good cause."

The district court further erred by denying CollegeSource's motion for leave to file a motion to strike the new preemption affirmative defense **without even requiring an opposition from A1**.  [APX24{Dkts 207 and 208)}]

> **b.    The District Court Erred In Holding That CollegeSource's Unjust Enrichment Claim Is Preempted**

The district court erroneously granted A1 summary judgment on CollegeSource's claim for unjust enrichment on the grounds of preemption, finding "**to the extent that** the course descriptions are subject to copyright, then CollegeSource's claim of unjust enrichment stems from acts that also violate the Copyright Act." [APX64{SJ Order}{emphasis added}]

The SJ Order must be reversed, because the district court did not rule that

---

[42]  A1's request for leave to amend is, therefore, distinguishable from CollegeSource's request to supplement its summary judgment opposition, which was supported by evidence establishing excusable neglect, but denied by the district court.

course descriptions are subject to copyright or that CollegeSource could even assert a claim for copyright infringement against A1 based on the course descriptions. First, the district court created a triable issue of fact by its "to the extent" language. Second, there is a triable issue of fact whether course descriptions qualify for copyright protection under the doctrine of merger. *See, e.g., Kohus v. Mariol,* 328 F.3d 848, 856 (6th Cir. 2003) ("When there is essentially only one way to express an idea, the idea and its expression are inseparable [i.e., they merge,] and copyright is no bar to copying that expression."). For example, there is essentially only one way to describe "American History from 1969 to the present." Third, CollegeSource is not claiming it owns any copyrights in the course descriptions that would allow it to bring a copyright infringement claim against A1, so A1's preemption defense is a red herring. 17 U.S.C. §501(b). The benefit conferred upon A1 was not the type of "benefit" actionable under the Copyright Act, but instead was in the form of the money A1 saved by "scraping" CollegeSource's pre-existing collection of digitized catalogs, instead of compiling and digitizing the catalogs itself. *International Union of Operating Engineers, Local 150, AFL-CIO v. Team 150 Party, Inc.*, 88 U.S.P.Q.2D (BNA) 1532 at *15-19 (2008).

The SJ Order must also be reversed, because course credits, names, prerequisites and equivalencies are ***data***, not works of authorship, and are not

copyrightable. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 353 (1991) (facts not subject to copyright protection, but protection for the effort of collecting and compiling facts, "may in certain circumstances be available under a theory of unfair competition.")

CollegeSource's unjust enrichment claim is not preempted because **the Digitized Information does not *exclusively* fall within the subject matter of copyright**. *Capital Concepts, Inc. v. Mountain Corp.*, 2012 WL 6761880 (W.D. Va. 2012) (unjust enrichment claim not preempted because it was "not based exclusively on copyright subject matter"); *Information Handling Servs. v. LRP Publs., Inc.*, Copy. L. Rep. (CCH) P28,177at *4-*5 (E.D. Pa. 2000) (unjust enrichment not preempted, because, while "there is no protection for the 'sweat of the brow' under copyright law," "there is no law that requires me to make my product publicly available; nor is it permissible to break into my house and steal it in order to copy the material it contains"); *Southwest Airlines Co.*, 318 F. Supp. 2d at 441 (unjust enrichment not preempted where defendant used facts from the plaintiff's website).

Any doubts as to whether CollegeSource's claim is preempted must be determined in CollegeSource's favor, because there exists a presumption against preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 471 (1996).

###### 4.    Counts 6 and 7: The District Court Erred In Granting Summary Judgment To A1 On CollegeSource's Claim For Trademark Infringement

The district erred when it granted summary judgment on the "likelihood of confusion" element. "To determine whether there is a likelihood of consumer confusion, this Circuit applies the factors listed in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)." [APX72-73{SJ Order}]

The district court erred by not "lowering the measure of confusion when a newcomer [A1] **copies an established trademark** [COLLEGESOURCE and CAREER GUIDANCE FOUNDATION]." *A&H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 204 (3d Cir. 1999)

The SJ Order should be reversed, because there is a triable issue of fact that the relevant *Lapp* factors favor CollegeSource.  Because A1 and CollegeSource "directly compete, mark similarity 'may be the most important of the ten factors in *Lapp*. (Citations)'" *Checkpoint Sys. v. Check Point Software Techs.,Inc*, 269 F.3d 270, 281 (3d Cir. 2001) "Courts have recognized that evidence of 'intentional, willful and admitted adoption of a mark closely similar to the existing marks' weighs strongly in favor of finding the likelihood of confusion." *Id*. at 286.  These factors strongly favor CollegeSource, and the district court erred when it drew inferences adverse to CollegeSource.  *Berner*, 987 F.2d at 978.

5.    **Count 9: The District Court Erred In Granting Summary Judgment To A1 On CollegeSource's Claim For False Advertising**

With respect to A1's false advertising regarding its course database, the district court erred when it ruled CollegeSource only presented a "single piece of evidence" in support of its claim of falsity. [APX86{SJ Order}] The SJ Order should be reversed, because CollegeSource presented evidence regarding ***all*** 4,360 institutions on A1's database. [APX3785{Novak}¶21, APX4682-4771{Ex. N-StartDate}]

With respect to A1's false advertising to colleges, the district court erred by finding some of A1's statements not literally false and by not even referring to the false statement that begins "CollegeSource is claiming ownership and control . . ." The SJ Order should be reversed because A1's statements are false and the district court drew inferences against CollegeSource. [APX563{Cooper}¶8] *Berner*, 987 F.2d at 978.

## IV.    CONCLUSION

The Court should: (1) reverse the RICO dismissal with instructions to allow leave to amend; (2) reverse the transfer order with instructions that the Pennsylvania Action be dismissed without prejudice, stayed or transferred to the California Court; (3) reverse or vacate the SJ Order and interim orders with instructions that the California Court is not bound by those orders.

DATED: June 25, 2014

Respectfully submitted by,

William F. Woods
3510 Front Street, #2F
San Diego, CA, 92103
Telephone: (619) 742-5000

LAW OFFICES OF DARREN J. QUINN
Darren J. Quinn
Alexander E. Papaefthimiou

_____/s/ Darren J. Quinn_____
Darren J. Quinn

12702 Via Cortina, Suite 105
Del Mar, CA 92014
Telephone: (858) 509-9401

*Attorneys for Plaintiff / Appellant*

3d Circuit Case Number: **12-4167**

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I certify that I have been admitted as a member of the bar of this Court.

DATED: June 25, 2014

   /s/Darren J. Quinn   
Darren J. Quinn

## <u>CERTIFICATE OF WORD COUNT</u>

I certify that:

Pursuant to Fed R. App. P. 32 (a)(7)(C), the attached opening brief is proportionately spaced, has a typeface of 14 points or more and contains 15,479 words.

DATED: June 25, 2014

      /s/Darren J. Quinn

      Darren J. Quinn

3d Circuit Case Number: **12-4167**

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the APPELLANT'S OPENING BRIEF with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on: June 25, 2014

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

DATED: June 25, 2014

___/s/Darren J. Quinn___
Darren J. Quinn

3d Circuit Case Number: **12-4167**

### <u>CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS</u>

     I certify that the text of the electronic APPELLANT'S OPENING BRIEF filed June 25, 2014 is identical to the paper copies of said brief submitted.

DATED: June 25, 2014

    /s/Darren J. Quinn    
Darren J. Quinn

3d Circuit Case Number: **12-4167**

## <u>CERTIFICATE OF VIRUS CHECK</u>

I certify that a virus detection program was run on the electronic files of APPELLANT'S OPENING BRIEF, and that no viruses were detected. The virus detection program used was Microsoft Security Essentials, last updated 6/25/14 at 10:20 a.m., Virus definition version 1.177.807.0, Spyware definition version 1.177.807.0.

DATED: June 25, 2014

         /s/Darren J. Quinn
         Darren J. Quinn